## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN DOE,

                          Plaintiff,

      v.

THERMO ELECTRIC COMPANY, INC.;
THERMO ELECTRIC PA, INC.; PIERRE
EMMANUEL-LUCQ; BRANDON CONLIN,

                         Defendants.

CASE NO. _____

## **COMPLAINT**

## **I.  PARTIES**

1.      Plaintiff, John Doe (hereinafter, "Plaintiff" or "Doe"), is an adult individual who resides at ███████████████████████████████████████████.

2.      Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with an address at 1193 McDermott Drive, West Chester, PA 19380, which is Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc.'s principal place of business, registered office address, and/or address at which these Defendants regularly conduct business.  According to its website, Defendant, Thermo Electric Company, Inc., is a multi-national corporation specializing in the engineering and manufacture of temperature measurement devices with plants and facilities across North America including in West Chester, Pennsylvania.  Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., was or were considered Doe's employer at all times relevant hereto.

3.     Defendant, Pierre Emmanuel-Lucq, was, at all times relevant hereto, the President and Chief Executive Officer ("CEO") of Defendant, Thermo Electric PA, Inc., with a regular place of business at 1193 McDermott Drive, West Chester, PA 19380.

4.     Defendant, Brandon Conlin, was, at all times relevant hereto, Operations Manager, and Plaintiff's direct supervisor/manager, with a regular place of business at 1193 McDermott Drive, West Chester, PA 19380.

## II.  JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction over Doe's claims pursuant to 28 U.S.C. § 1331 because the claims present a federal question.

6.     This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in International Shoe Company v. State of Washington, 326 U.S. 310 (1945), and its progeny.

7.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Defendants conduct business in this judicial district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.     Plaintiff has satisfied any and all administrative prerequisites to bringing suit and has exhausted any and all applicable administrative remedies.  Plaintiff's Notice of Right-to-Sue from the Equal Employment Opportunity Commission ("EEOC") is attached hereto as Exhibit "A."

## IV.  FACTS COMMON TO ALL CLAIMS FOR RELIEF

9.      Plaintiff was hired in or around 2011, by Defendants, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., originally as an Inventory Supervisor, at 1193 McDermott Drive, West Chester, PA 19380.

10.      Plaintiff is bisexual.

11.      Plaintiff is HIV-positive.  Human Immunodeficiency Virus ("HIV") substantially limits the major bodily function of the immune system, and Plaintiff has an actual and/or perceived physical impairment, and a covered disability, under the Americans with Disabilities Act ("ADA"), as amended.

12.      At the time of Doe's hire, it was not believed to be known by management, including President and Chief Executive Officer ("CEO"), Pierre Emmanuel-Lucq, and/or Plaintiff's co-employees, that Plaintiff is HIV-positive.

13.      Plaintiff recollects that he performed satisfactorily for the approximately nine (9) going on ten (10) years that Plaintiff was employed with Thermo Electric, since the beginning of Plaintiff's employment in or around May 2011.

14.      Plaintiff was hired as Inventory Supervisor and was promoted to the level of Application Engineer during his employment.

15.      Plaintiff was wrongfully demoted to Quality Control Inspector in or around February 2020.  Plaintiff believes this was after the time that his HIV-positive status was discovered by Mr. Emmanuel-Lucq and Mr. Brandon Conlin.  In or around February 2020, when Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed from a supervisory/managerial position into a non-supervisory/managerial position, and his pay was cut.

16.     Plaintiff was subsequently wrongfully discharged on or about June 9, 2020, on account of his HIV-positive status, and on account of Plaintiff being bisexual.

17.     On June 15, 2020, the Supreme Court of the United States held that anti-LGBT bias in employment decisions was illegal sex discrimination as a matter of law.  See Bostock v. Clayton Cnty., Ga., Consolidated Case No. 17-1618, 590 U.S. ___, 140 S. Ct. 1731 (U.S. June 15, 2020).  Doe's termination was "because of" his sex and sexual orientation; alternatively, if necessary, sex and sexual orientation was a motivating factor in Doe's discharge.  See id.

18.     Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of HIV and sexual-orientation discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq, the President and Chief Executive Officer of Thermo Electric Company, speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward Plaintiff based on Plaintiff's HIV-positive status and sexual orientation, from Mr. Emmanuel-Lucq, the President and Chief Executive Officer of Thermo Electric Company to former employee, Manufacturing Supervisor, Mr. De Los Santos, to wit:

> ***While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office.  This happened while looking for someone in the office next to Pierre's.  I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this.  When I heard that I didn't know what to do.  Because [Plaintiff] is a long time friend and I didn't want him to get blindsided.  I decided to tell him what I've just heard.  His condition is not something he can control.  No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.***

4

See Witness Statement from Former Employee, Thermo Electric Manufacturing Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

19.      In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq, President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive status and the company medical insurance, or words to that effect.  Mr. Conlin is also the Plaintiff's direct supervisor/manager.  When both men saw Plaintiff, they immediately stopped speaking at that point in time.

20.      Plaintiff recollects a conversation where the medical insurance benefits at the company were being discussed, by a representative on behalf of Thermo Electric Company, Inc.'s insurance carrier, believed to be Greystone Benefits.  The representative commented during the meeting that there were "high dollar prescriptions" and "high dollar people" on the plan, or words to that effect.

21.      Plaintiff also recollects that, during his employment, it was a hostile and abusive atmosphere based on sex and sexual orientation – actual *or* perceived – including, for example, Mr. Conlin, Plaintiff's direct supervisor/manager, routinely making disparaging comments such as, "fags"; "faggots"; or, "That's gay," or words to that effect, in a manner intended to be offensive to the LGBT community, openly and casually in the workplace.

22.      Plaintiff recollects that he called off from work to his direct supervisor/manager, Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.

23.     Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

24.     On or about June 9, 2020, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq, upon information and belief, was believed to be involved in the decision to terminate Plaintiff's employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer, Human Resources Manager.

25.     According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric on the timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Defendants did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to Plaintiff upon discharge.

26.     Upon information and belief, other similarly-situated individuals were believed to have been afforded time-off during the relevant timeframe, including but not limited to, for example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not treated the same on account of his HIV-positive status and/or sexual orientation.

27.     Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received extra time off from the company because the company thought she had COVID-19.  Ms.

Feconda is believed to be heterosexual as she had, at the relevant time, a partner of the opposite sex.  Ms. Feconda is not believed to be HIV-positive.

28.     Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and believed to be Receiving Manager at the relevant time, is believed to have requested days, possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020. Mr. Hoover is believed to be heterosexual as he was married to someone of the opposite sex during the relevant time.  Mr. Hoover is not believed to be HIV-positive.

29.     Plaintiff believes he was subsequently replaced with Mr. Rick Hoover, an individual who is believed to be heterosexual, as Mr. Hoover was married to someone of the opposite sex at the relevant time.  Mr. Hoover is not believed to be HIV-positive.

30.     Thermo Electric supplied documentation to the Equal Employment Opportunity Commission ("EEOC") containing false and pretextual reasons and allegations against Plaintiff, for taking adverse employment actions him, including Kriss Cramer, Human Resources ("HR") Manager, and Brandon Conlin, Operations Manager who is also Plaintiff's direct supervisor/manager, discussing allegations against Plaintiff, which Plaintiff denies, of: "Burping," "Openly farting," "disruption due to bodily functions / smells," and "picking at or picking pimples," which are denied, are false, malicious, and pretextual, and a cover-up for discrimination, as evidenced plainly by virtue of the evidence in the form of the Witness Statement attached hereto as Exhibit "B."

31.     In documentation supplied to the EEOC, Mr. Brandon Conlin, Operations Manager, who is Plaintiff's direct supervisor/manager, stated to Ms. Kriss Cramer, HR Manager, on May 12, 2020, concerning Plaintiff:  "Not a doctor – but he has many of the characteristics of someone with Borderline personality disorder," which is denied; is false, malicious, and

exaggerated, as Plaintiff is not diagnosed with Borderline Personality Disorder; and constitutes pretext and a cover-up for discrimination.

32.     In documentation supplied to the EEOC, Ms. Kriss Cramer, Human Resources Manager, sent an e-mail to Mr. Brandon Conlin, and Mr. Pierre-Emmanuel Lucq, on January 14, 2020, concerning Plaintiff, "He has a habit of taking PTO for personal reasons or emergencies," but it was known Plaintiff was HIV-positive, as above, by Mr. Pierre-Emmanuel Lucq and Mr. Brandon Conlin, who had discriminatory animus or bias against Plaintiff on account of his HIV-positive status and sexual orientation.

33.     Plaintiff points to further evidence supportive of pretext in that the performance evaluation conducted on Plaintiff on January 29, 2019, the year prior, demonstrated that Plaintiff scored 85.5 out of 100.

## CLAIMS FOR RELIEF

### COUNT I:
### WRONGFUL DISCHARGE/TERMINATION BASED ON SEXUAL ORIENTATON IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.
### (Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc., and Thermo Electric PA, Inc.)

34.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

35.     At all times relevant hereto, Defendant, Thermo Electric Company, Inc., and Thermo Electric PA, Inc, each employed 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year

36.     Plaintiff was hired in or around 2011, by Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., originally as Inventory Supervisor, at 1193 McDermott Drive, West Chester, PA 19380.

37.     Plaintiff is bisexual.

38.     Plaintiff recollects that he performed satisfactorily for the approximately nine (9) going on ten (10) years that Plaintiff was employed with Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc.

39.     Plaintiff was promoted to Application Engineer during his employment in which position he performed satisfactorily.

40.     Plaintiff was wrongfully demoted to Quality Control Inspector in or around February 2020 on account of sexual orientation.  In or around February 2020, when Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed from a supervisory/managerial position into a non-supervisory/managerial position, and his pay was cut.

41.     Plaintiff was subsequently wrongfully discharged on or about June 9, 2020, on account of Plaintiff being bisexual.

42.     On June 15, 2020, the Supreme Court of the United States held that anti-LGBT bias in employment decisions was illegal sex discrimination as a matter of law.  See Bostock v. Clayton Cnty., Ga., Consolidated Case No. 17-1618, 590 U.S. ___, 140 S. Ct. 1731 (U.S. June 15, 2020).  Doe's termination was "because of" his sex and sexual orientation; alternatively, if necessary, sex and sexual orientation was a motivating factor in Doe's discharge.  See id.

43.     Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation

occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward

Plaintiff, from Mr. Emmanuel-Lucq, the President and Chief Executive Officer of Thermo

Electric Company, to former employee, Manufacturing Supervisor, Mr. De Los Santos, to wit:

> *While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office. This happened while looking for someone in the office next to Pierre's. I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this. When I heard that I didn't know what to do. Because [Plaintiff] is a long time friend and I didn't want him to get blindsided. I decided to tell him what I've just heard. His condition is not something he can control. No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.*

See Witness Statement from Former Employee, Thermo Electric Manufacturing

Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

44.     In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq,

President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the

company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive

status and the company medical insurance, or words to that effect. Mr. Conlin is also the

Plaintiff's direct supervisor/manager. When both men saw Plaintiff, they immediately stopped

speaking at that point in time.

45.     Plaintiff also recollects that, during his employment, it was a hostile and abusive

atmosphere based on sex and sexual orientation – actual *or* perceived – including, for example,

Mr. Conlin, Plaintiff's direct supervisor/manager, routinely making disparaging comments such

as, "fags"; "faggots"; or, "That's gay," or words to that effect, in a manner intended to be

offensive to the LGBT community, openly and casually in the workplace.

46.     Plaintiff recollects that he called off from work to his direct supervisor/manager,

Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the

timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.

47.    Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

48.    On or about June 9, 2020, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq, upon information and belief, was believed to be involved in the decision to terminate Plaintiff's employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer, Human Resources Manager.

49.    According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric on the timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Thermo Electric did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to Plaintiff upon discharge.

50.    Upon information and belief, other similarly-situated individuals were believed to have been afforded time-off during the relevant timeframe, including but not limited to, for example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not treated the same on account of his sexual orientation.

51.     Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received extra time off from the company because the company thought she had COVID-19.  Ms. Feconda is believed to be heterosexual as she had, at the relevant time, a partner of the opposite sex.

52.     Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and believed to be Receiving Manager at the relevant time, is believed to have requested days, possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020. Mr. Hoover is believed to be heterosexual as he was married to someone of the opposite sex during the relevant time.

53.     Plaintiff believes he was subsequently replaced with Mr. Rick Hoover, an individual who is believed to be heterosexual, as Mr. Hoover was married to someone of the opposite sex at the relevant time.

54.     Thermo Electric supplied documentation to the Equal Employment Opportunity Commission ("EEOC") containing false and pretextual reasons and allegations against Plaintiff, for taking adverse employment actions him, including Kriss Cramer, Human Resources ("HR") Manager, and Brandon Conlin, Operations Manager who is also Plaintiff's direct supervisor/manager, discussing allegations against Plaintiff, which Plaintiff denies, of: "Burping," "Openly farting," "disruption due to bodily functions / smells," and "picking at or picking pimples," which are denied, are false, malicious, and pretextual, and a cover-up for discrimination, as evidenced plainly by virtue of the evidence in the form of the Witness Statement attached hereto as Exhibit "B."

55.     In documentation supplied to the EEOC, Mr. Brandon Conlin, Operations Manager, who is Plaintiff's direct supervisor/manager, stated to Ms. Kriss Cramer, HR Manager, on May 12, 2020, concerning Plaintiff:  "Not a doctor – but he has many of the characteristics of someone with Borderline personality disorder," which is denied; is false, malicious, and exaggerated, as Plaintiff is not diagnosed with Borderline Personality Disorder; and constitutes pretext and a cover-up for discrimination.

56.     In documentation supplied to the EEOC, Ms. Kriss Cramer, Human Resources Manager, sent an e-mail to Mr. Brandon Conlin, and Mr. Pierre-Emmanuel Lucq, on January 14, 2020, concerning Plaintiff, "He has a habit of taking PTO for personal reasons or emergencies," but it was known Plaintiff was HIV-positive, as above, by Mr. Pierre-Emmanuel Lucq and Mr. Brandon Conlin, who had discriminatory animus or bias against Plaintiff on account of his HIV-positive status and sexual orientation.

57.     Plaintiff points to further evidence supportive of pretext in that the performance evaluation conducted on Plaintiff on January 29, 2019, the year prior, demonstrated that Plaintiff scored 85.5 out of 100.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants for an amount that will fully and fairly compensate Doe for any and all back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Doe would have received; damages for pain and suffering, mental anguish, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and a requirement that Defendants provide a neutral employment reference for Doe; to remove the false accusations from Doe's files; to adopt, post, and disseminate a non-discrimination and anti-harassment policy which is fully LGBT-inclusive if lacking; to provide appropriate training in

non-discrimination and anti-harassment based on sexual orientation, gender identity, and gender expression, to managers and co-employees; and for Defendants to post notice of the verdict in this matter.

## COUNT II:
### HARASSMENT, SUPERVISORY HARASSMENT, AND HOSTILE WORK ENVIRONMENT BASED ON SEXUAL ORIENTATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.
### (Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc., and Thermo Electric PA, Inc.)

58.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

59.     Plaintiff is bisexual.

60.     Plaintiff was wrongfully demoted to Quality Control Inspector in or around February 2020 on account of sexual orientation.  In or around February 2020, when Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed from a supervisory/managerial position into a non-supervisory/managerial position, and his pay was cut.

61.     Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward Plaintiff, from Mr. Emmanuel-Lucq, the President and Chief Executive Officer of Thermo Electric Company, to former employee, Manufacturing Supervisor, Mr. De Los Santos, to wit:

*While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office.  This happened while looking for someone in the office next to Pierre's.  I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this.  When I heard that I didn't know what to do.  Because [Plaintiff] is a long time friend and I didn't want him to get blindsided.  I decided to tell him what I've just heard.  His condition is not something he can control.  No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.*

See Witness Statement from Former Employee, Thermo Electric Manufacturing

Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

62.     In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq,

President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the

company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive

status and the company medical insurance, or words to that effect.  Mr. Conlin is also the

Plaintiff's direct supervisor/manager.  When both men saw Plaintiff, they immediately stopped

speaking at that point in time.

63.     Plaintiff also recollects that, during his employment, it was a hostile and abusive

atmosphere based on sex and sexual orientation – actual *or* perceived – including, for example,

Mr. Conlin, Plaintiff's direct supervisor/manager, routinely making disparaging comments such

as, "fags"; "faggots"; or, "That's gay," or words to that effect, in a manner intended to be

offensive to the LGBT community, openly and casually in the workplace.

64.     Plaintiff recollects that he called off from work to his direct supervisor/manager,

Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the

timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects,

prior to his wrongful and retaliatory discharge.

65.     Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

66.     On or about June 9, 2020, Defendant, Thermo Electric Company, Inc. and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq, upon information and belief, was believed to be involved in the decision to terminate Plaintiff's employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer, Human Resources Manager.

67.     According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric on the timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Thermo Electric did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to Plaintiff upon discharge.

68.     Upon information and belief, other similarly-situated individuals were believed to have been afforded time-off during the relevant timeframe, including but not limited to, for example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not treated the same on account of his sexual orientation.

69.     Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received extra time off from the company because the company thought she had COVID-19.  Ms.

16

Feconda is believed to be heterosexual as she had, at the relevant time, a partner of the opposite sex.

70.     Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and believed to be Receiving Manager at the relevant time, is believed to have requested days, possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020. Mr. Hoover is believed to be heterosexual as he was married to someone of the opposite sex during the relevant time.

71.     Plaintiff believes he was subsequently replaced with Mr. Rick Hoover, an individual who is believed to be heterosexual, as Mr. Hoover was married to someone of the opposite sex at the relevant time.

72.     Plaintiff suffered harassment including from Mr. Pierre Emmanuel Lucq, President and CEO; and Mr. Brandon Conlin, Operations Manager, and Plaintiff's direct supervisor/manager.

73.     Plaintiff suffered tangible employment action (demotion and discharge).

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount that will fully and fairly compensate Doe for any and all back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Doe would have received; damages for pain and suffering, mental anguish, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and a requirement that Defendants provide a neutral employment reference for Doe; to remove the false accusations from Doe's files; to adopt, post, and disseminate a non-discrimination and anti-harassment policy which is fully LGBT-inclusive if lacking; to provide appropriate training in non-discrimination and anti-harassment based on sexual orientation, gender identity, and gender

expression, to managers and co-employees; and for Defendants to post notice of the verdict in this matter.

**COUNT III:**
**WRONGFUL DEMOTION BASED ON SEXUAL ORIENTATON IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, <u>et seq.</u>**
**(Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc., and Thermo Electric**
**<u>PA, Inc.)</u>**

74.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

75.     Plaintiff is bisexual.

76.     Plaintiff was wrongfully demoted from Application Engineer to Quality Control Inspector in or around February 2020 on account of sexual orientation.  Plaintiff believes he was demoted after his HIV-positive status was discovered by Mr. Emmanuel-Lucq and Mr. Brandon Conlin.  In or around February 2020, when Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed from a supervisory/managerial position into a non-supervisory/managerial position, and his pay was cut.

77.     Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward Plaintiff, from Mr. Emmanuel-Lucq, the President and Chief Executive Officer of Thermo Electric Company, to former employee, Manufacturing Supervisor, Mr. De Los Santos, to wit:

*While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office. This happened while looking for someone in the office next to Pierre's. I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this. When I heard that I didn't know what to do. Because [Plaintiff] is a long time friend and I didn't want him to get blindsided. I decided to tell him what I've just heard. His condition is not something he can control. No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.*

See Witness Statement from Former Employee, Thermo Electric Manufacturing

Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

78.     In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq,

President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the

company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive

status and the company medical insurance, or words to that effect. Mr. Conlin is also the

Plaintiff's direct supervisor/manager. When both men saw Plaintiff, they immediately stopped

speaking at that point in time.

79.     Plaintiff also recollects that, during his employment, it was a hostile and abusive

atmosphere based on sex and sexual orientation – actual *or* perceived – including, for example,

Mr. Conlin, Plaintiff's direct supervisor/manager, routinely making disparaging comments such

as, "fags"; "faggots"; or, "That's gay," or words to that effect, in a manner intended to be

offensive to the LGBT community, openly and casually in the workplace.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an

amount that will fully and fairly compensate Doe for any and all back and front pay, overtime,

seniority, benefits, bonuses, commissions, and any promotions Doe would have received;

damages for pain and suffering, mental anguish, embarrassment, and emotional distress; punitive

damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and a

requirement that Defendants provide a neutral employment reference for Doe; to remove the false accusations from Doe's files; to adopt, post, and disseminate a non-discrimination and anti-harassment policy which is fully LGBT-inclusive if lacking; to provide appropriate training in non-discrimination and anti-harassment based on sexual orientation, gender identity, and gender expression, to managers and co-employees; and for Defendants to post notice of the verdict in this matter.

**COUNT IV:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. § 12101,** *et seq.***,**
**(Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc., and Thermo Electric PA, Inc.)**

80.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

81.     Doe was wrongfully terminated on account of disability; a record of a disability; and/or because Doe was perceived or regarded as disabled.

82.     Doe is HIV-positive.  HIV substantially limits the major life function of the immune system.  Doe therefore has a covered disability under the ADA.

83.     At the time of Doe's hire, it was not believed to be known by management, including President and Chief Executive Officer ("CEO"), Pierre Emmanuel-Lucq, and/or Doe's co-employees, that Plaintiff is HIV-positive.

84.     Upon information and belief, Defendants, including Pierre Emmanuel-Lucq, President and CEO; and Plaintiff's direct supervisor/manager, Mr. Brandon Conlin, Operations Manager; had notice or knowledge of Plaintiff's HIV-positive status, at the time of Plaintiff's wrongful termination/discharge.

85.     Plaintiff was promoted to Application Engineer during his employment in which position he performed satisfactorily.

86.     Plaintiff was wrongfully demoted to Quality Control Inspector in or around February 2020.  Plaintiff believes this was after the time that his HIV-positive status was discovered by Mr. Emmanuel-Lucq and Mr. Brandon Conlin.  In or around February 2020, when Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed from a supervisory/managerial position into a non-supervisory/managerial position, and his pay was cut.

87.     Plaintiff was subsequently wrongfully discharged on or about June 9, 2020, on account of his HIV-positive status.

88.     Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of HIV discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward Plaintiff based on Plaintiff's HIV-positive status, from Mr. Emmanuel-Lucq, the President and Chief Executive Officer of Thermo Electric Company, to former employee, Manufacturing Supervisor, Mr. De Los Santos, to wit:

> ***While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office.  This happened while looking for someone in the office next to Pierre's.  I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this.  When I heard that I didn't know what to do.  Because [Plaintiff] is a long time friend and I didn't want him to get blindsided.  I decided to tell him what I've just heard.  His condition is not something***

*he can control.  No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.*

See Witness Statement from Former Employee, Thermo Electric Manufacturing Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

89.    In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq, President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive status and the company medical insurance, or words to that effect.  Mr. Conlin is also the Plaintiff's direct supervisor/manager.  When both men saw Plaintiff, they immediately stopped speaking at that point in time.

90.    Plaintiff recollects a conversation where the medical insurance benefits at the company were being discussed, by a representative on behalf of Thermo Electric Company, Inc.'s insurance carrier, believed to be Greystone Benefits.  The representative commented during the meeting that there were "high dollar prescriptions" and "high dollar people" on the plan, or words to that effect.

91.    Plaintiff recollects that he called off from work to his direct supervisor/manager, Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.

92.    Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

93.     On or about June 9, 2020, Defendant, Thermo Electric Company, Inc., and/or

Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq,

upon information and belief, was believed to be involved in the decision to terminate Plaintiff's

employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the

conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq

about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's

employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer,

Human Resources Manager.

94.     According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in

this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric, on the

timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Thermo

Electric did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to

Plaintiff upon discharge.

95.     Upon information and belief, other similarly-situated individuals were believed to

have been afforded time-off during the relevant timeframe, including but not limited to, for

example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not

treated the same on account of his HIV-positive status.

96.     Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved

to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received

extra time off from the company because the company thought she had COVID-19.  Ms.

Feconda is not believed to be HIV-positive.

97.     Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and

believed to be Receiving Manager at the relevant time, is believed to have requested days,

possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020.

Mr. Hoover is not believed to be HIV-positive.

98.     Plaintiff believes he was subsequently replaced with Mr. Rick Hoover, an

individual who is not believed to be HIV-positive.

99.     Thermo Electric supplied documentation to the Equal Employment Opportunity

Commission ("EEOC") containing false and pretextual reasons and allegations against Plaintiff,

for taking adverse employment actions him, including Kriss Cramer, Human Resources ("HR")

Manager, and Brandon Conlin, Operations Manager who is also Plaintiff's direct

supervisor/manager, discussing allegations against Plaintiff, which Plaintiff denies, of:

"Burping," "Openly farting," "disruption due to bodily functions / smells," and "picking at or

picking pimples," which are denied, are false, malicious, and pretextual, and a cover-up for

discrimination, as evidenced plainly by virtue of the evidence in the form of the Witness

Statement attached hereto as Exhibit "B."

100.     In documentation supplied to the EEOC, Mr. Brandon Conlin, Operations

Manager, who is Plaintiff's direct supervisor/manager, stated to Ms. Kriss Cramer, HR Manager,

on May 12, 2020, concerning Plaintiff:  "Not a doctor – but he has many of the characteristics of

someone with Borderline personality disorder," which is denied; is false, malicious, and

exaggerated, as Plaintiff is not diagnosed with Borderline Personality Disorder; and constitutes

pretext and a cover-up for discrimination.

101.     In documentation supplied to the EEOC, Ms. Kriss Cramer, Human Resources

Manager, sent an e-mail to Mr. Brandon Conlin, and Mr. Pierre-Emmanuel Lucq, on January 14,

2020, concerning Plaintiff, "He has a habit of taking PTO for personal reasons or emergencies,"

but it was known Plaintiff was HIV-positive, as above, by Mr. Pierre-Emmanuel Lucq and Mr. Conlin.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount that will fully and fairly compensate Doe for any and all back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Doe would have received; damages for pain and suffering, mental anguish, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and a requirement that Defendants provide a neutral employment reference for Doe; to remove the false accusations from Doe's files; to institute appropriate policies and procedures; to provide appropriate training in non-discrimination and anti-harassment, to managers and co-employees; and for Defendants to post notice of the verdict in this matter.

### COUNT V:
### HARASSMENT, SUPERVISORY HARASSMENT, AND HOSTILE WORK ENVIRONMENT, BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. § 12101, *et seq.* (Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc., and Thermo Electric PA, Inc.)

102.    All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

103.    Doe was subjected to supervisory harassment and a hostile work environment/harassment based on disability; Doe's record of a disability; and/or because Doe was perceived or regarded as disabled.

104.    Doe is HIV-positive.  HIV substantially limits the major life function of the immune system.  Doe therefore has a covered disability under the ADA.

105.    Plaintiff was wrongfully demoted to Quality Control Inspector in or around February 2020.  Plaintiff believes this was after the time that his HIV-positive status was

discovered by Mr. Emmanuel-Lucq and Mr. Brandon Conlin.  In or around February 2020, when Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed from a supervisory/managerial position into a non-supervisory/managerial position, and his pay was cut.

106.    Plaintiff was subsequently wrongfully discharged on or about June 9, 2020, on account of his HIV-positive status.

107.    Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of HIV discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward Plaintiff based on Plaintiff's HIV-positive status, from Mr. Emmanuel-Lucq, the President and Chief Executive Officer of Thermo Electric Company, to former employee, Manufacturing Supervisor, Mr. De Los Santos, to wit:

> ***While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office.  This happened while looking for someone in the office next to Pierre's.  I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this.  When I heard that I didn't know what to do.  Because [Plaintiff] is a long time friend and I didn't want him to get blindsided.  I decided to tell him what I've just heard.  His condition is not something he can control.  No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.***

See Witness Statement from Former Employee, Thermo Electric Manufacturing Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

108.    In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq, President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive status and the company medical insurance, or words to that effect.  Mr. Conlin is also the Plaintiff's direct supervisor/manager.  When both men saw Plaintiff, they immediately stopped speaking at that point in time.

109.    Plaintiff recollects a conversation where the medical insurance benefits at the company were being discussed, by a representative on behalf of Thermo Electric Company, Inc.'s insurance carrier, believed to be Greystone Benefits.  The representative commented during the meeting that there were "high dollar prescriptions" and "high dollar people" on the plan, or words to that effect.

110.    Plaintiff recollects that he called off from work to his direct supervisor/manager, Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.

111.    Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

112.    On or about June 9, 2020, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq, upon information and belief, was believed to be involved in the decision to terminate Plaintiff's employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq

about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's

employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer,

Human Resources Manager.

113.    According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in

this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric on the

timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Thermo

Electric did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to

Plaintiff upon discharge.

114.    Upon information and belief, other similarly-situated individuals were believed to

have been afforded time-off during the relevant timeframe, including but not limited to, for

example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not

treated the same on account of his HIV-positive status.

115.    Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved

to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received

extra time off from the company because the company thought she had COVID-19.  Ms.

Feconda is not believed to be HIV-positive.

116.    Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and

believed to be Receiving Manager at the relevant time, is believed to have requested days,

possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020.

Mr. Hoover is not believed to be HIV-positive.

117.    Plaintiff believes he was subsequently replaced with Mr. Rick Hoover, an

individual who is not believed to be HIV-positive.

118.    Plaintiff suffered tangible employment action (demotion and discharge).

28

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount that will fully and fairly compensate Doe for any and all back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Doe would have received; damages for pain and suffering, mental anguish, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and a requirement that Defendants provide a neutral employment reference for Doe; to remove the false accusations from Doe's files; to institute appropriate policies and procedures; to provide appropriate training in non-discrimination and anti-harassment, to managers and co-employees; and for Defendants to post notice of the verdict in this matter.

### COUNT VI:
### WRONGFUL DEMOTION BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. § 12101, *et seq.* (Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc., and Thermo Electric PA, Inc.)

119.    All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

120.    Doe was wrongfully demoted on account of disability; a record of a disability; and/or because Doe was perceived or regarded as disabled.

121.    Doe is HIV-positive.  HIV substantially limits the major life function of the immune system.  Doe therefore has a covered disability under the ADA.

122.    At the time of Doe's hire, it was not believed to be known by management, including President and Chief Executive Officer ("CEO"), Pierre Emmanuel-Lucq, and/or Doe's co-employees, that Plaintiff is HIV-positive.

123.    Plaintiff recollects that he performed satisfactorily for the approximately nine (9) going on ten (10) years that Plaintiff was employed with Thermo Electric.

124.    Plaintiff was promoted to Application Engineer during his employment in which position he performed satisfactorily.

125.    Plaintiff was wrongfully demoted to Quality Control Inspector in or around February 2020.  Plaintiff believes this was after the time that his HIV-positive status was discovered by Mr. Emmanuel-Lucq and Mr. Brandon Conlin.  In or around February 2020, when Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed from a supervisory/managerial position into a non-supervisory/managerial position, and his pay was cut.

126.    Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of HIV discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward Plaintiff based on Plaintiff's HIV-positive status, from Mr. Emmanuel-Lucq, the President and Chief Executive Officer of Thermo Electric Company, to former employee, Manufacturing Supervisor, Mr. De Los Santos, to wit:

> ***While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office.  This happened while looking for someone in the office next to Pierre's.  I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this.  When I heard that I didn't know what to do.  Because [Plaintiff] is a long time friend and I didn't want him to get blindsided.  I decided to tell him what I've just heard.  His condition is not something he can control.  No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.***

See Witness Statement from Former Employee, Thermo Electric Manufacturing Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

127.    In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq, President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive status and the company medical insurance, or words to that effect.  Mr. Conlin is also the Plaintiff's direct supervisor/manager.  When both men saw Plaintiff, they immediately stopped speaking at that point in time.

128.    Plaintiff recollects a conversation where the medical insurance benefits at the company were being discussed, by a representative on behalf of Thermo Electric Company, Inc.'s insurance carrier, believed to be Greystone Benefits.  The representative commented during the meeting that there were "high dollar prescriptions" and "high dollar people" on the plan, or words to that effect.

129.    Thermo Electric supplied documentation to the Equal Employment Opportunity Commission ("EEOC") containing false and pretextual reasons and allegations against Plaintiff, for taking adverse employment actions him, including Kriss Cramer, Human Resources ("HR") Manager, and Brandon Conlin, Operations Manager who is also Plaintiff's direct supervisor/manager, discussing allegations against Plaintiff, which Plaintiff denies, of: "Burping," "Openly farting," "disruption due to bodily functions / smells," and "picking at or picking pimples," which are denied, are false, malicious, and pretextual, and a cover-up for discrimination, as evidenced plainly by virtue of the evidence in the form of the Witness Statement attached hereto as Exhibit "B."

130.    In documentation supplied to the EEOC, Mr. Brandon Conlin, Operations Manager, who is Plaintiff's direct supervisor/manager, stated to Ms. Kriss Cramer, HR Manager, on May 12, 2020, concerning Plaintiff:  "Not a doctor – but he has many of the characteristics of someone with Borderline personality disorder," which is denied; is false, malicious, and exaggerated, as Plaintiff is not diagnosed with Borderline Personality Disorder; and constitutes pretext and a cover-up for discrimination.

131.    In documentation supplied to the EEOC, Ms. Kriss Cramer, Human Resources Manager, sent an e-mail to Mr. Brandon Conlin, and Mr. Pierre-Emmanuel Lucq, on January 14, 2020, concerning Plaintiff, "He has a habit of taking PTO for personal reasons or emergencies," but it was known Plaintiff was HIV-positive, as above, by Mr. Pierre-Emmanuel Lucq and Mr. Conlin.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount that will fully and fairly compensate Doe for any and all back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Doe would have received; damages for pain and suffering, mental anguish, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and a requirement that Defendants provide a neutral employment reference for Doe; to remove the false accusations from Doe's files; to institute appropriate policies and procedures; to provide appropriate training in non-discrimination and anti-harassment, to managers and co-employees; and for Defendants to post notice of the verdict in this matter.

**COUNT VII:**
**FAILURE-TO-ACCOMMODATE DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. § 12101, *et seq.*, (Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc., and Thermo Electric PA, Inc.)**

132.    All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

133.    Doe is HIV-positive.  HIV substantially limits the major life function of the immune system.  Doe therefore has a covered disability under the ADA.

134.    Defendants failed to accommodate Plaintiff's known disability, including to wit:

a.      Plaintiff was wrongfully demoted to Quality Control Inspector in or around February 2020.  Plaintiff believes this was after the time that his HIV-positive status was discovered by Mr. Emmanuel-Lucq and Mr. Brandon Conlin.  In or around February 2020, when Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed from a supervisory/managerial position into a non-supervisory/managerial position, and his pay was cut.

b.      Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of HIV discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward Plaintiff based on Plaintiff's HIV-positive status, from Mr. Emmanuel-Lucq, the President and Chief Executive Officer of Thermo Electric, to former employee, Manufacturing Supervisor, Mr. De Los Santos, to wit:

> *While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office.  This happened while looking for someone in the office next to Pierre's.  I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this.  When I heard that I didn't*

*know what to do.  Because [Plaintiff] is a long time friend and I didn't want him to get blindsided.  I decided to tell him what I've just heard.  His condition is not something he can control.  No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.*

See Witness Statement from Former Employee, Thermo Electric Manufacturing Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

c.      In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq, President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive status and the company medical insurance, or words to that effect.  Mr. Conlin is also the Plaintiff's direct supervisor/manager.  When both men saw Plaintiff, they immediately stopped speaking at that point in time.

d.      Plaintiff recollects a conversation where the medical insurance benefits at the company were being discussed, by a representative on behalf of Thermo Electric Company, Inc.'s insurance carrier, believed to be Greystone Benefits.  The representative commented during the meeting that there were "high dollar prescriptions" and "high dollar people" on the plan, or words to that effect.

e.      Plaintiff recollects that he called off from work to his direct supervisor/manager, Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.

f.      Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

g.      On or about June 9, 2020, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq, upon information and belief, was believed to be involved in the decision to terminate Plaintiff's employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer, Human Resources Manager.

h.      According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric on the timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Thermo Electric did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to Plaintiff upon discharge.

i.      Upon information and belief, other similarly-situated individuals were believed to have been afforded time-off during the relevant timeframe, including but not limited to, for example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not treated the same on account of his HIV-positive status.

j.      Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received extra time off from the company because the company thought she had COVID-19.  Ms. Feconda is not believed to be HIV-positive.

k.      Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and believed to be Receiving Manager at the relevant time, is believed to have requested days,

possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020. Mr. Hoover is not believed to be HIV-positive.

l.     In documentation supplied to the EEOC, Ms. Kriss Cramer, Human Resources Manager, sent an e-mail to Mr. Brandon Conlin, and Mr. Pierre-Emmanuel Lucq, on January 14, 2020, concerning Plaintiff, "He has a habit of taking PTO for personal reasons or emergencies," but it was known Plaintiff was HIV-positive, as above, by Mr. Pierre-Emmanuel Lucq and Mr. Conlin.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount that will fully and fairly compensate Doe for any and all back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Doe would have received; damages for pain and suffering, mental anguish, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and a requirement that Defendants provide a neutral employment reference for Doe; to remove the false accusations from Doe's files; to institute appropriate policies and procedures; to provide appropriate training in non-discrimination and anti-harassment, to managers and co-employees; and for Defendants to post notice of the verdict in this matter.

**COUNT VIII:**
**RETALIATORY DISCHARGE/TERMINATION IN RETALIATION FOR REQUESTS**
**FOR REASONABLE ACCOMMODATION IN VIOLATION OF THE AMERICANS**
**WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. § 12101, *et seq.*,**
**(Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc., and Thermo Electric**
**PA, Inc.)**

135.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

136.    Doe was terminated in retaliation for Doe's protected conduct/activity in the form of his requests for reasonable accommodation under the Americans with Disabilities Act ("ADA"), as amended.

137.    Doe is HIV-positive.  HIV substantially limits the major life function of the immune system.  Doe therefore has a covered disability under the ADA.

138.    Plaintiff recollects that he performed satisfactorily for the approximately nine (9) years that Plaintiff was employed with Thermo Electric PA, Inc.

139.    Plaintiff was promoted to Application Engineer during his employment in which position he performed satisfactorily.

140.    Plaintiff was wrongfully demoted to Quality Control Inspector in or around February 2020.  Plaintiff believes this was after the time that his HIV-positive status was discovered by Mr. Emmanuel-Lucq and Mr. Brandon Conlin.  In or around February 2020, when Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed from a supervisory/managerial position into a non-supervisory/managerial position, and his pay was cut.

141.    Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of HIV discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward Plaintiff based on Plaintiff's HIV-positive status, from Mr. Emmanuel-Lucq, the President and

Chief Executive Officer of Thermo Electric Company, to former employee, Manufacturing

Supervisor, Mr. De Los Santos, to wit:

> *While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office.  This happened while looking for someone in the office next to Pierre's.  I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this.  When I heard that I didn't know what to do.  Because [Plaintiff] is a long time friend and I didn't want him to get blindsided.  I decided to tell him what I've just heard.  His condition is not something he can control.  No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.*

See Witness Statement from Former Employee, Thermo Electric Manufacturing

Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

142.    In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq,

President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the

company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive

status and the company medical insurance, or words to that effect.  Mr. Conlin is also the

Plaintiff's direct supervisor/manager.  When both men saw Plaintiff, they immediately stopped

speaking at that point in time.

143.    Plaintiff recollects a conversation where the medical insurance benefits at the

company were being discussed, by a representative on behalf of Thermo Electric Company,

Inc.'s insurance carrier, believed to be Greystone Benefits.  The representative commented

during the meeting that there were "high dollar prescriptions" and "high dollar people" on the

plan, or words to that effect.

144.    Plaintiff recollects that he called off from work to his direct supervisor/manager,

Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the

timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.

145.    Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

146.    On or about June 9, 2020, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq, upon information and belief, was believed to be involved in the decision to terminate Plaintiff's employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer, Human Resources Manager.

147.    According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric on the timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Thermo Electric did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to Plaintiff upon discharge.

148.    Upon information and belief, other similarly-situated individuals were believed to have been afforded time-off during the relevant timeframe, including but not limited to, for example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not treated the same on account of his HIV-positive status.

149.     Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received extra time off from the company because the company thought she had COVID-19.  Ms. Feconda is not believed to be HIV-positive.

150.     Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and believed to be Receiving Manager at the relevant time, is believed to have requested days, possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020. Mr. Hoover is not believed to be HIV-positive.

151.     Thermo Electric supplied documentation to the Equal Employment Opportunity Commission ("EEOC") containing false and pretextual reasons and allegations against Plaintiff, for taking adverse employment actions him, including Kriss Cramer, Human Resources ("HR") Manager, and Brandon Conlin, Operations Manager who is also Plaintiff's direct supervisor/manager, discussing allegations against Plaintiff, which Plaintiff denies, of: "Burping," "Openly farting," "disruption due to bodily functions / smells," and "picking at or picking pimples," which are denied, are false, malicious, and pretextual, and a cover-up for discrimination, as evidenced plainly by virtue of the evidence in the form of the Witness Statement attached hereto as Exhibit "B."

152.     In documentation supplied to the EEOC, Mr. Brandon Conlin, Operations Manager, who is Plaintiff's direct supervisor/manager, stated to Ms. Kriss Cramer, HR Manager, on May 12, 2020, concerning Plaintiff:  "Not a doctor – but he has many of the characteristics of someone with Borderline personality disorder," which is denied; is false, malicious, and exaggerated, as Plaintiff is not diagnosed with Borderline Personality Disorder; and constitutes pretext and a cover-up for discrimination.

153.    In documentation supplied to the EEOC, Ms. Kriss Cramer, Human Resources

Manager, sent an e-mail to Mr. Brandon Conlin, and Mr. Pierre-Emmanuel Lucq, on January 14,

2020, concerning Plaintiff, "He has a habit of taking PTO for personal reasons or emergencies,"

but it was known Plaintiff was HIV-positive, as above, by Mr. Pierre-Emmanuel Lucq and Mr.

Conlin.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an

amount that will fully and fairly compensate Doe for any and all back and front pay, overtime,

seniority, benefits, bonuses, commissions, and any promotions Doe would have received;

damages for pain and suffering, mental anguish, embarrassment, and emotional distress; punitive

damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and a

requirement that Defendants provide a neutral employment reference for Doe; to remove the

false accusations from Doe's files; to institute appropriate policies and procedures; to provide

appropriate training in non-discrimination and anti-harassment, to managers and co-employees;

and for Defendants to post notice of the verdict in this matter.

### COUNT IX:
### WRONGFUL TERMINATION IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA"), 43 P.S. §§ 951-963 – BASED ON SEX, SEXUAL ORIENTATION, DISABILITY, AND RETALIATION,
### (Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc.; Thermo Electric PA, Inc.; Pierre Emmanuel-Lucq; and Brandon Conlin)

154.    All of the foregoing paragraphs are hereby incorporated by reference as if the

same were more fully set forth at length herein.

155.    Plaintiff is bisexual.  The Pennsylvania Human Relations Commission ("PHRC")

issued guidance in August 2018 that sexual orientation, which includes being bisexual, was

protected within the Pennsylvania Human Relations Commission's ("PHRC's") prohibition on

sex discrimination.

41

156.    Plaintiff is HIV-positive.  HIV substantially limits the major bodily function of the immune system, and Plaintiff has an actual and/or perceived physical impairment, and a covered disability, under the Pennsylvania Human Relations Act ("PHRA").

157.    Plaintiff was wrongfully demoted to Quality Control Inspector in or around February 2020.  Plaintiff believes this was after the time that his HIV-positive status was discovered by Mr. Emmanuel-Lucq and Mr. Brandon Conlin.  In or around February 2020, when Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed from a supervisory/managerial position into a non-supervisory/managerial position, and his pay was cut.

158.    Plaintiff was subsequently wrongfully discharged on or about June 9, 2020, on account of his HIV-positive status, and on account of Plaintiff being bisexual.

159.    Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of HIV and sexual-orientation discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward Plaintiff based on Plaintiff's HIV-positive status and sexual orientation, from Mr. Emmanuel-Lucq, the President and Chief Executive Officer of Thermo Electric Company, to former employee, Manufacturing Supervisor, Mr. De Los Santos, to wit:

*While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office.  This happened while looking for someone in the office next to Pierre's.  I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this.  When I heard that I didn't*

*know what to do. Because [Plaintiff] is a long time friend and I didn't want him to get blindsided. I decided to tell him what I've just heard. His condition is not something he can control. No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.*

<u>See</u> Witness Statement from Former Employee, Thermo Electric Manufacturing Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

160.     In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq, President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive status and the company medical insurance, or words to that effect. Mr. Conlin is also the Plaintiff's direct supervisor/manager. When both men saw Plaintiff, they immediately stopped speaking at that point in time.

161.     Plaintiff recollects a conversation where the medical insurance benefits at the company were being discussed, by a representative on behalf of Thermo Electric Company, Inc.'s insurance carrier, believed to be Greystone Benefits. The representative commented during the meeting that there were "high dollar prescriptions" and "high dollar people" on the plan, or words to that effect.

162.     Plaintiff also recollects that, during his employment, it was a hostile and abusive atmosphere based on sex and sexual orientation – actual *or* perceived – including, for example, Mr. Conlin, Plaintiff's direct supervisor/manager, routinely making disparaging comments such as, "fags"; "faggots"; or, "That's gay," or words to that effect, in a manner intended to be offensive to the LGBT community, openly and casually in the workplace.

163.     Plaintiff recollects that he called off from work to his direct supervisor/manager, Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the

timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.

164.    Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

165.    On or about June 9, 2020, Defendant, Thermo Electric Company, Inc. and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq, upon information and belief, was believed to be involved in the decision to terminate Plaintiff's employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer, Human Resources Manager.

166.    According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric on the timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Thermo Electric did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to Plaintiff upon discharge.

167.    Upon information and belief, other similarly-situated individuals were believed to have been afforded time-off during the relevant timeframe, including but not limited to, for example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not treated the same on account of his HIV-positive status and/or sexual orientation.

168.     Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received extra time off from the company because the company thought she had COVID-19.  Ms. Feconda is believed to be heterosexual as she had, at the relevant time, a partner of the opposite sex.  Ms. Feconda is not believed to be HIV-positive.

169.     Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and believed to be Receiving Manager at the relevant time, is believed to have requested days, possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020. Mr. Hoover is believed to be heterosexual as he was married to someone of the opposite sex during the relevant time.  Mr. Hoover is not believed to be HIV-positive.

170.     Plaintiff believes he was subsequently replaced with Mr. Rick Hoover, an individual who is believed to be heterosexual, as Mr. Hoover was married to someone of the opposite sex at the relevant time.  Mr. Hoover is not believed to be HIV-positive.

171.     Thermo Electric supplied documentation to the Equal Employment Opportunity Commission ("EEOC") containing false and pretextual reasons and allegations against Plaintiff, for taking adverse employment actions him, including Kriss Cramer, Human Resources ("HR") Manager, and Brandon Conlin, Operations Manager who is also Plaintiff's direct supervisor/manager, discussing allegations against Plaintiff, which Plaintiff denies, of: "Burping," "Openly farting," "disruption due to bodily functions / smells," and "picking at or picking pimples," which are denied, are false, malicious, and pretextual, and a cover-up for discrimination, as evidenced plainly by virtue of the evidence in the form of the Witness Statement attached hereto as Exhibit "B."

172.    In documentation supplied to the EEOC, Mr. Brandon Conlin, Operations Manager, who is Plaintiff's direct supervisor/manager, stated to Ms. Kriss Cramer, HR Manager, on May 12, 2020, concerning Plaintiff:  "Not a doctor – but he has many of the characteristics of someone with Borderline personality disorder," which is denied; is false, malicious, and exaggerated, as Plaintiff is not diagnosed with Borderline Personality Disorder; and constitutes pretext and a cover-up for discrimination.

173.    In documentation supplied to the EEOC, Ms. Kriss Cramer, Human Resources Manager, sent an e-mail to Mr. Brandon Conlin, and Mr. Pierre-Emmanuel Lucq, on January 14, 2020, concerning Plaintiff, "He has a habit of taking PTO for personal reasons or emergencies," but it was known Plaintiff was HIV-positive, as above, by Mr. Pierre-Emmanuel Lucq and Mr. Brandon Conlin.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount that will fully and fairly compensate Doe for any and all back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Doe would have received; damages for pain and suffering, mental anguish, embarrassment, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and a requirement that Defendants provide a neutral employment reference for Doe; to remove the false accusations from Doe's files; to institute appropriate policies and procedures; to provide appropriate training in non-discrimination and anti-harassment, to managers and co-employees; and for Defendants to post notice of the verdict in this matter.

**COUNT X:**
**SUPERVISORY HARASSMENT, HOSTILE WORK ENVIRONMENT, AND/OR**
**HARASSMENT IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS**
**ACT, 43 P.S. §§ 951-963 – BASED ON SEX, SEXUAL ORIENTATION, DISABILITY,**
**AND RETALIATION,**
**(Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc.; Thermo Electric PA,**
**Inc.; Pierre Emmanuel-Lucq; and Brandon Conlin)**

174.    All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

175.    Doe is bisexual.

176.    Doe is HIV-positive.  HIV substantially limits the major life function of the immune system.  Doe therefore has a covered disability under the ADA.

177.    Doe was subjected to supervisory harassment and a hostile work environment/harassment based on sex, sexual orientation, disability, and retaliation, including to wit:

a.    Plaintiff was wrongfully demoted to Quality Control Inspector in or around February 2020.  Plaintiff believes this was after the time that his HIV-positive status was discovered by Mr. Emmanuel-Lucq and Mr. Brandon Conlin.  In or around February 2020, when Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed from a supervisory/managerial position into a non-supervisory/managerial position, and his pay was cut.

b.    Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of HIV and sexual-orientation discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about

Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B"

establishes that a conversation occurred, which was subsequently communicated to Plaintiff,

which is discriminatory toward Plaintiff based on Plaintiff's HIV-positive status and sexual

orientation, from Mr. Emmanuel-Lucq, the President and Chief Executive Officer of Thermo

Electric Company, to former employee, Manufacturing Supervisor, Mr. De Los Santos, to wit:

> *While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office.  This happened while looking for someone in the office next to Pierre's.  I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this.  When I heard that I didn't know what to do.  Because [Plaintiff] is a long time friend and I didn't want him to get blindsided.  I decided to tell him what I've just heard.  His condition is not something he can control.  No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.*

See Witness Statement from Former Employee, Thermo Electric Manufacturing

Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

c.       In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq,

President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the

company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive

status and the company medical insurance, or words to that effect.  Mr. Conlin is also the

Plaintiff's direct supervisor/manager.  When both men saw Plaintiff, they immediately stopped

speaking at that point in time.

d.       Plaintiff recollects a conversation where the medical insurance benefits at the

company were being discussed, by a representative on behalf of Thermo Electric Company,

Inc.'s insurance carrier, believed to be Greystone Benefits.  The representative commented

during the meeting that there were "high dollar prescriptions" and "high dollar people" on the

plan, or words to that effect.

e.      Plaintiff also recollects that, during his employment, it was a hostile and abusive atmosphere based on sex and sexual orientation – actual *or* perceived – including, for example, Mr. Conlin, Plaintiff's direct supervisor/manager, routinely making disparaging comments such as, "fags"; "faggots"; or, "That's gay," or words to that effect, in a manner intended to be offensive to the LGBT community, openly and casually in the workplace.

f.      Plaintiff recollects that he called off from work to his direct supervisor/manager, Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.

g.      Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

h.      On or about June 9, 2020, Defendant, Thermo Electric Company, Inc. and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq, upon information and belief, was believed to be involved in the decision to terminate Plaintiff's employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer, Human Resources Manager.

i.      According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric, on the timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Thermo

Electric did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to Plaintiff upon discharge.

        j.      Upon information and belief, other similarly-situated individuals were believed to have been afforded time-off during the relevant timeframe, including but not limited to, for example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not treated the same on account of his HIV-positive status and/or sexual orientation.

        k.      Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received extra time off from the company because the company thought she had COVID-19.  Ms. Feconda is not believed to be heterosexual as she had a partner of the opposite sex at the relevant time.  Ms. Feconda is not believed to be HIV-positive.

        l.      Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and believed to be Receiving Manager at the relevant time, is believed to have requested days, possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020.  Mr. Hoover is believed to be heterosexual as he was married to an individual of the opposite sex at the relevant time.  Mr. Hoover is not believed to be HIV-positive.

        178.      Plaintiff suffered tangible employment action (demotion and discharge).

        **WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an amount that will fully and fairly compensate Doe for any and all back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Doe would have received; damages for pain and suffering, mental anguish, embarrassment, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and a requirement that Defendants provide a neutral employment reference for Doe; to remove the false accusations

from Doe's files; to institute appropriate policies and procedures; to provide appropriate training

in non-discrimination and anti-harassment, to managers and co-employees; and for Defendants to

post notice of the verdict in this matter.

## COUNT XI:
### FAILURE-TO-ACCOMMODATE DISABILITY IN VIOLATION OF THE
### PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. §§ 951-963
### (Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc.; Thermo Electric PA, Inc.; Pierre Emmanuel-Lucq; and Brandon Conlin)

179.    All of the foregoing paragraphs are hereby incorporated by reference as if the

same were more fully set forth at length herein.

180.    Defendants failed to accommodate Plaintiff's known disability, including to wit:

a.    Plaintiff was wrongfully demoted to Quality Control Inspector in or around

February 2020.  Plaintiff believes this was after the time that his HIV-positive status was

discovered by Mr. Emmanuel-Lucq and Mr. Brandon Conlin.  In or around February 2020, when

Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed

from a supervisory/managerial position into a non-supervisory/managerial position, and his pay

was cut.

b.    Plaintiff identifies the following evidence – which Plaintiff contends also amounts

to direct evidence – of HIV discrimination at Thermo Electric.  An individual who is the former

Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left

employment in July 2019, and who was a co-employee of Plaintiff's during the time period in

question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status

at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation

occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward

Plaintiff based on Plaintiff's HIV-positive status, from Mr. Emmanuel-Lucq, the President and

Chief Executive Officer of Thermo Electric Company, to former employee, Manufacturing

Supervisor, Mr. De Los Santos, to wit:

> *While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office.  This happened while looking for someone in the office next to Pierre's.  I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this.  When I heard that I didn't know what to do.  Because [Plaintiff] is a long time friend and I didn't want him to get blindsided.  I decided to tell him what I've just heard.  His condition is not something he can control.  No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.*

See Witness Statement from Former Employee, Thermo Electric Manufacturing

Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

c.       In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq,

President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the

company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive

status and the company medical insurance, or words to that effect.  Mr. Conlin is also the

Plaintiff's direct supervisor/manager.  When both men saw Plaintiff, they immediately stopped

speaking at that point in time.

d.       Plaintiff recollects a conversation where the medical insurance benefits at the

company were being discussed, by a representative on behalf of Thermo Electric Company,

Inc.'s insurance carrier, believed to be Greystone Benefits.  The representative commented

during the meeting that there were "high dollar prescriptions" and "high dollar people" on the

plan, or words to that effect.

e.       Plaintiff recollects that he called off from work to his direct supervisor/manager,

Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the

timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.

       f.      Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

       g.      On or about June 9, 2020, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq, upon information and belief, was believed to be involved in the decision to terminate Plaintiff's employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer, Human Resources Manager.

       h.      According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric on the timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Thermo Electric did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to Plaintiff upon discharge.

       i.      Upon information and belief, other similarly-situated individuals were believed to have been afforded time-off during the relevant timeframe, including but not limited to, for example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not treated the same on account of his HIV-positive status.

j.       Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved

to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received

extra time off from the company because the company thought she had COVID-19.  Ms.

Feconda is not believed to be HIV-positive.

k.       Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and

believed to be Receiving Manager at the relevant time, is believed to have requested days,

possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020.

Mr. Hoover is not believed to be HIV-positive.

l.       In documentation supplied to the EEOC, Ms. Kriss Cramer, Human Resources

Manager, sent an e-mail to Mr. Brandon Conlin, and Mr. Pierre-Emmanuel Lucq, on January 14,

2020, concerning Plaintiff, "He has a habit of taking PTO for personal reasons or emergencies,"

but it was known Plaintiff was HIV-positive, as above, by Mr. Pierre-Emmanuel Lucq and Mr.

Conlin.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an

amount that will fully and fairly compensate Doe for any and all back and front pay, overtime,

seniority, benefits, bonuses, commissions, and any promotions Doe would have received;

damages for pain and suffering, mental anguish, embarrassment, and emotional distress; pre- and

post-judgment interest, reasonable attorneys' fees, costs of suit; and a requirement that

Defendants provide a neutral employment reference for Doe; to remove the false accusations

from Doe's files; to institute appropriate policies and procedures; to provide appropriate training

in non-discrimination and anti-harassment, to managers and co-employees; and for Defendants to

post notice of the verdict in this matter.

**COUNT XII:**
**RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF THE**
**PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. §§ 951-963 – RETALIATION**
**FOR REQUESTS FOR REASONABLE ACCOMODATION**
**(Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc.; Thermo Electric PA,**
**Inc.; Pierre Emmanuel-Lucq; and Brandon Conlin)**

181.    All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

182.    Doe was terminated in retaliation for Doe's protected conduct/activity in the form of his requests for reasonable accommodation on account of his disability, which is protected under the Pennsylvania Human Relations Act ("PHRA").

183.    Doe is HIV-positive.  HIV substantially limits the major life function of the immune system.  Doe therefore has a covered disability under the ADA.

184.    Plaintiff was wrongfully demoted to Quality Control Inspector in or around February 2020.  Plaintiff believes this was after the time that his HIV-positive status was discovered by Mr. Emmanuel-Lucq and Mr. Brandon Conlin.  In or around February 2020, when Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed from a supervisory/managerial position into a non-supervisory/managerial position, and his pay was cut.

185.    Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of HIV discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward

Plaintiff based on Plaintiff's HIV-positive status, from Mr. Emmanuel-Lucq, the President and

Chief Executive Officer of Thermo Electric Company, to former employee, Manufacturing

Supervisor, Mr. De Los Santos, to wit:

> *While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office. This happened while looking for someone in the office next to Pierre's. I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this. When I heard that I didn't know what to do. Because [Plaintiff] is a long time friend and I didn't want him to get blindsided. I decided to tell him what I've just heard. His condition is not something he can control. No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.*

See Witness Statement from Former Employee, Thermo Electric Manufacturing

Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

186.    In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq,

President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the

company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive

status and the company medical insurance, or words to that effect.  Mr. Conlin is also the

Plaintiff's direct supervisor/manager.  When both men saw Plaintiff, they immediately stopped

speaking at that point in time.

187.    Plaintiff recollects a conversation where the medical insurance benefits at the

company were being discussed, by a representative on behalf of Thermo Electric Company,

Inc.'s insurance carrier, believed to be Greystone Benefits.  The representative commented

during the meeting that there were "high dollar prescriptions" and "high dollar people" on the

plan, or words to that effect.

188.    Plaintiff recollects that he called off from work to his direct supervisor/manager,

Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the

timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.

189.    Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

190.    On or about June 9, 2020, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq, upon information and belief, was believed to be involved in the decision to terminate Plaintiff's employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer, Human Resources Manager.

191.    According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric on the timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Thermo Electric did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to Plaintiff upon discharge.

192.    Upon information and belief, other similarly-situated individuals were believed to have been afforded time-off during the relevant timeframe, including but not limited to, for example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not treated the same on account of his HIV-positive status.

193.    Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received extra time off from the company because the company thought she had COVID-19.  Ms. Feconda is not believed to be HIV-positive.

194.    Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and believed to be Receiving Manager at the relevant time, is believed to have requested days, possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020. Mr. Hoover is not believed to be HIV-positive.

195.    Thermo Electric supplied documentation to the Equal Employment Opportunity Commission ("EEOC") containing false and pretextual reasons and allegations against Plaintiff, for taking adverse employment actions him, including Kriss Cramer, Human Resources ("HR") Manager, and Brandon Conlin, Operations Manager who is also Plaintiff's direct supervisor/manager, discussing allegations against Plaintiff, which Plaintiff denies, of: "Burping," "Openly farting," "disruption due to bodily functions / smells," and "picking at or picking pimples," which are denied, are false, malicious, and pretextual, and a cover-up for discrimination, as evidenced plainly by virtue of the evidence in the form of the Witness Statement attached hereto as Exhibit "B."

196.    In documentation supplied to the EEOC, Mr. Brandon Conlin, Operations Manager, who is Plaintiff's direct supervisor/manager, stated to Ms. Kriss Cramer, HR Manager, on May 12, 2020, concerning Plaintiff:  "Not a doctor – but he has many of the characteristics of someone with Borderline personality disorder," which is denied; is false, malicious, and exaggerated, as Plaintiff is not diagnosed with Borderline Personality Disorder; and constitutes pretext and a cover-up for discrimination.

197.    In documentation supplied to the EEOC, Ms. Kriss Cramer, Human Resources

Manager, sent an e-mail to Mr. Brandon Conlin, and Mr. Pierre-Emmanuel Lucq, on January 14,

2020, concerning Plaintiff, "He has a habit of taking PTO for personal reasons or emergencies,"

but it was known Plaintiff was HIV-positive, as above, by Mr. Pierre-Emmanuel Lucq and Mr.

Conlin.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, for an

amount that will fully and fairly compensate Doe for any and all back and front pay, overtime,

seniority, benefits, bonuses, commissions, and any promotions Doe would have received;

damages for pain and suffering, mental anguish, embarrassment, and emotional distress; pre- and

post-judgment interest, reasonable attorneys' fees, costs of suit; and a requirement that

Defendants provide a neutral employment reference for Doe; to remove the false accusations

from Doe's files; to institute appropriate policies and procedures; to provide appropriate training

in non-discrimination and anti-harassment, to managers and co-employees; and for Defendants to

post notice of the verdict in this matter.

## COUNT XIII:
## INTERFERENCE, DISCRIMINATION, AND/OR RETALIATION, IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT ("FMLA"), (Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc.; Thermo Electric PA, Inc.; Pierre Emmanuel-Lucq; and Brandon Conlin)

198.    All of the foregoing paragraphs are hereby incorporated by reference as if the

same were more fully set forth at length herein.

199.    At all times relevant hereto, Defendant, Thermo Electric Company, Inc., and

Defendant, Thermo Electric PA, Inc., was each engaged in commerce, each was in an industry or

activity affecting commerce, and each employed 50 or more employees for each working day

during each of 20 or more calendar workweeks in the current or preceding calendar year.

200.    At all times relevant hereto, Plaintiff was employed at a worksite where 50 or more employees were employed by the employer within 75 miles of that worksite.

201.    Plaintiff was hired by Defendants, Thermo Electric Company, Inc., and/or Defendant, Thermo Electric PA, Inc.,  on or about May 2011, which is the date that his employment began the 12-month accrual for purposes of eligibility under the FMLA.

202.    As of April 2020, Plaintiff been employed by the Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., for more than one (1) year and 1,250 hours of service.  Plaintiff was eligible for leave under the FMLA.

203.    Doe is HIV-positive.  HIV substantially limits the major life function of the immune system.  Doe has a serious health condition under the FMLA.

204.    Plaintiff was wrongfully demoted to Quality Control Inspector in or around February 2020.  Plaintiff believes this was after the time that his HIV-positive status was discovered by Mr. Emmanuel-Lucq and Mr. Brandon Conlin.  In or around February 2020, when Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed from a supervisory/managerial position into a non-supervisory/managerial position, and his pay was cut.

205.    Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of HIV discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward

Plaintiff based on Plaintiff's HIV-positive status, from Mr. Emmanuel-Lucq, the President and

Chief Executive Officer of Thermo Electric Company, to former employee, Manufacturing

Supervisor, Mr. De Los Santos, to wit:

> *While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office.  This happened while looking for someone in the office next to Pierre's.  I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this.  When I heard that I didn't know what to do.  Because [Plaintiff] is a long time friend and I didn't want him to get blindsided.  I decided to tell him what I've just heard.  His condition is not something he can control.  No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.*

See Witness Statement from Former Employee, Thermo Electric PA, Inc., Manufacturing

Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

206.    In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq,

President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the

company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive

status and the company medical insurance, or words to that effect.  Mr. Conlin is also the

Plaintiff's direct supervisor/manager.  When both men saw Plaintiff, they immediately stopped

speaking at that point in time.

207.    Plaintiff recollects a conversation where the medical insurance benefits at the

company were being discussed, by a representative on behalf of Thermo Electric Company,

Inc.'s insurance carrier, believed to be Greystone Benefits.  The representative commented

during the meeting that there were "high dollar prescriptions" and "high dollar people" on the

plan, or words to that effect.

208.    Plaintiff recollects that he called off from work to his direct supervisor/manager,

Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the

timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.

209.   Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

210.   On or about June 9, 2020, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq, upon information and belief, was believed to be involved in the decision to terminate Plaintiff's employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer, Human Resources Manager.

211.   According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric on the timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Thermo Electric did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to Plaintiff upon discharge.

212.   Upon information and belief, other similarly-situated individuals were believed to have been afforded time-off during the relevant timeframe, including but not limited to, for example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not treated the same on account of his HIV-positive status and sexual orientation.

213.    Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received extra time off from the company because the company thought she had COVID-19.  Ms. Feconda is believed to be heterosexual and is not believed to be HIV-positive.

214.    Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and believed to be Receiving Manager at the relevant time, is believed to have requested days, possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020. Mr. Hoover is believed to be heterosexual and is not believed to be HIV-positive.

215.    In documentation supplied to the EEOC, Ms. Kriss Cramer, Human Resources Manager, sent an e-mail to Mr. Brandon Conlin, and Mr. Pierre-Emmanuel Lucq, on January 14, 2020, concerning Plaintiff, "He has a habit of taking PTO for personal reasons or emergencies," but it was known Plaintiff was HIV-positive, as above, by Mr. Pierre-Emmanuel Lucq and Mr. Conlin.

216.    Thermo Electric failed to adequately provide Doe with sufficient notice of his rights under the FMLA despite Mr. Conlin and Mr. Pierre Emmanuel-Lucq being aware of Plaintiff's HIV-positive status, FMLA eligibility, and Plaintiff's requests for assistance in the form of requests for time-off related to his health condition in or around April 2020, May 2020, and/or possibly June 1, 2020.

217.    Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during the timeframe of April 2020, May 2020, and/or possibly June 1, 2020.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

218.    Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., did not offer Doe intermittent or continuous FMLA despite him being eligible for the same, despite

Plaintiff's requests for assistance in the form of requests for time-off related to his health condition in or around April 2020, May 2020, and/or possibly June 1, 2020, and instead Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., terminated Doe on June 9, 2020.

**WHEREFORE,** Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount that will fully and fairly compensate him for back pay and benefits from the time period of his discharge to the present; front pay; back and front seniority, benefits, bonuses, commissions, overtime, shift differentials, and raises Doe would have received; any and all amounts of back and front benefits; any other actual monetary losses including any past and future medical expenses and any other debts incurred due to a lack of necessary income; any incidental costs or expenses associated with incurring these events without necessary income from employment, up to a sum equal to 12 weeks of wages of salary, as permitted by the FMLA; liquidated or double damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); reasonable attorneys' fees; interest under 29 U.S.C. § 2617(a)(1)(A)(ii); expert witness fees; and costs of suit.

**COUNT XIV:**
**RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT ("FMLA")**
**(Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc.; Thermo Electric PA, Inc.; Pierre Emmanuel-Lucq; and Brandon Conlin)**

219.    All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

220.    At all times relevant hereto, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., each was engaged in commerce, each was in an industry or activity affecting commerce, and each employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

221.     At all times relevant hereto, Plaintiff was employed at a worksite where 50 or more employees were employed by the employer within 75 miles of that worksite.

222.     Plaintiff was hired by Defendants, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., on or about May 2011, which is the date that his employment began the 12-month accrual for purposes of eligibility under the FMLA.

223.     As of April 2020, Plaintiff had been employed by the Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., for more than one (1) year and 1,250 hours of service.  Plaintiff was eligible for leave under the FMLA.

224.     Doe is HIV-positive.  HIV substantially limits the major life function of the immune system.  Doe has a serious health condition covered by the FMLA.

225.     Plaintiff was wrongfully demoted to Quality Control Inspector in or around February 2020.  Plaintiff believes this was after the time that his HIV-positive status was discovered by Mr. Emmanuel-Lucq and Mr. Brandon Conlin.  In or around February 2020, when Plaintiff was demoted from Application Engineer to Quality Control Inspector, he was removed from a supervisory/managerial position into a non-supervisory/managerial position, and his pay was cut.

226.     Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of HIV discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward

Plaintiff based on Plaintiff's HIV-positive status, from Mr. Emmanuel-Lucq, the President and

Chief Executive Officer of Thermo Electric Company, to former employee, Manufacturing

Supervisor, Mr. De Los Santos, to wit:

> *While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office.  This happened while looking for someone in the office next to Pierre's.  I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this.  When I heard that I didn't know what to do.  Because [Plaintiff] is a long time friend and I didn't want him to get blindsided.  I decided to tell him what I've just heard.  His condition is not something he can control.  No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.*

<u>See</u> Witness Statement from Former Employee, Thermo Electric Manufacturing

Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

227.    In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq,

President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the

company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive

status and the company medical insurance, or words to that effect.  Mr. Conlin is also the

Plaintiff's direct supervisor/manager.  When both men saw Plaintiff, they immediately stopped

speaking at that point in time.

228.    Plaintiff recollects a conversation where the medical insurance benefits at the

company were being discussed, by a representative on behalf of Thermo Electric Company,

Inc.'s insurance carrier, believed to be Greystone Benefits.  The representative commented

during the meeting that there were "high dollar prescriptions" and "high dollar people" on the

plan, or words to that effect.

229.    Plaintiff recollects that he called off from work to his direct supervisor/manager,

Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the

timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.

230.    Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

231.    On or about June 9, 2020, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq, upon information and belief, was believed to be involved in the decision to terminate Plaintiff's employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer, Human Resources Manager.

232.    According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric on the timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Thermo Electric did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to Plaintiff upon discharge.

233.    Upon information and belief, other similarly-situated individuals were believed to have been afforded time-off during the relevant timeframe, including but not limited to, for example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not treated the same on account of his HIV-positive status and sexual orientation.

234.    Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received extra time off from the company because the company thought she had COVID-19.  Ms. Feconda is believed to be heterosexual and is not believed to be HIV-positive.

235.    Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and believed to be Receiving Manager at the relevant time, is believed to have requested days, possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020. Mr. Hoover is believed to be heterosexual and is not believed to be HIV-positive.

236.    In documentation supplied to the EEOC, Ms. Kriss Cramer, Human Resources Manager, sent an e-mail to Mr. Brandon Conlin, and Mr. Pierre-Emmanuel Lucq, on January 14, 2020, concerning Plaintiff, "He has a habit of taking PTO for personal reasons or emergencies," but it was known Plaintiff was HIV-positive, as above, by Mr. Pierre-Emmanuel Lucq and Mr. Conlin.

237.    Thermo Electric failed to adequately provide Doe with sufficient notice of his rights under the FMLA despite Mr. Conlin and Mr. Pierre Emmanuel-Lucq being aware of Plaintiff's HIV-positive status, FMLA eligibility, and Plaintiff's requests for assistance in the form of requests for time-off related to his health condition in or around April 2020, May 2020, and/or possibly June 1, 2020.

238.    Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during the timeframe of April 2020, May 2020, and/or possibly June 1, 2020.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

239.    Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., did not offer Doe intermittent or continuous FMLA despite him being eligible for the same, despite

Plaintiff's requests for assistance in the form of requests for time-off related to his health condition in or around April 2020, May 2020, and/or possibly June 1, 2020, and instead Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., terminated Doe on June 9, 2020.

**WHEREFORE,** Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount that will fully and fairly compensate him for back pay and benefits from the time period of his discharge to the present; front pay; back and front seniority, benefits, bonuses, commissions, overtime, shift differentials, and raises Doe would have received; any and all amounts of back and front benefits; any other actual monetary losses including any past and future medical expenses and any other debts incurred due to a lack of necessary income; any incidental costs or expenses associated with incurring these events without necessary income from employment, up to a sum equal to 12 weeks of wages of salary, as permitted by the FMLA; liquidated or double damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); reasonable attorneys' fees; interest under 29 U.S.C. § 2617(a)(1)(A)(ii); expert witness fees; and costs of suit.

**COUNT XV:**
**INTERFERENCE IN VIOLATION OF THE FAMILIES FIRST CORONAVIRUS**
**RESPONSE ACT / EMERGENCY PAID SICK LEAVE ACT**
**(Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc.; Thermo Electric PA, Inc.; Pierre Emmanuel-Lucq; and Brandon Conlin)**

240.    All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

241.    At all times relevant hereto, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., each was engaged in commerce, each was in an industry or activity affecting commerce, and each employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

242.    At all times relevant hereto, Plaintiff was employed at a worksite where 50 or more employees were employed by the employer within 75 miles of that worksite.

243.    Plaintiff had, at all times relevant hereto, been employed by the Defendants, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., for at least thirty (30) days making him eligible for leave under the Emergency Paid Sick Leave Act ("EPSLA").

244.    Doe is HIV-positive.  HIV substantially limits the major life function of the immune system.

245.    Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of HIV discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward Plaintiff based on Plaintiff's HIV-positive status, from Mr. Emmanuel-Lucq, the President and Chief Executive Officer of Thermo Electric Company to former employee, Manufacturing Supervisor, Mr. De Los Santos, to wit:

> *While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office.  This happened while looking for someone in the office next to Pierre's.  I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this.  When I heard that I didn't know what to do.  Because [Plaintiff] is a long time friend and I didn't want him to get blindsided.  I decided to tell him what I've just heard.  His condition is not something he can control.  No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.*

See Witness Statement from Former Employee, Thermo Electric Manufacturing Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

246.    In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq, President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive status and the company medical insurance, or words to that effect.  Mr. Conlin is also the Plaintiff's direct supervisor/manager.  When both men saw Plaintiff, they immediately stopped speaking at that point in time.

247.    Plaintiff recollects a conversation where the medical insurance benefits at the company were being discussed, by a representative on behalf of Thermo Electric PA, Inc.'s insurance carrier, believed to be Greystone Benefits.  The representative commented during the meeting that there were "high dollar prescriptions" and "high dollar people" on the plan, or words to that effect.

248.    Plaintiff recollects that he called off from work to his direct supervisor/manager, Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.

249.    Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

250.    On or about June 9, 2020, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq, upon information and belief, was believed to be involved in the decision to terminate Plaintiff's

employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer, Human Resources Manager.

251.    According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric on the timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Thermo Electric did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to Plaintiff upon discharge.

252.    Upon information and belief, other similarly-situated individuals were believed to have been afforded time-off during the relevant timeframe, including but not limited to, for example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not treated the same on account of his HIV-positive status and sexual orientation.

253.    Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received extra time off from the company because the company thought she had COVID-19.  Ms. Feconda is believed to be heterosexual and is not believed to be HIV-positive.

254.    Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and believed to be Receiving Manager at the relevant time, is believed to have requested days, possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020.  Mr. Hoover is believed to be heterosexual and is not believed to be HIV-positive.

255.   In documentation supplied to the EEOC, Ms. Kriss Cramer, Human Resources Manager, sent an e-mail to Mr. Brandon Conlin, and Mr. Pierre-Emmanuel Lucq, on January 14, 2020, concerning Plaintiff, "He has a habit of taking PTO for personal reasons or emergencies," but it was known Plaintiff was HIV-positive, as above, by Mr. Pierre-Emmanuel Lucq and Mr. Conlin.

256.   Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., did not permit Plaintiff to take time off under the FFCRA and/or EPSLA.

257.   Plaintiff requested assistance in the form of requests for time-off related to his health condition in or around April 2020, May 2020, and/or possibly June 1, 2020.

258.   Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during the timeframe of April 2020, May 2020, and/or possibly June 1, 2020.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

**WHEREFORE,** Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount that will fully and fairly compensate him for an amount equal to the federal minimum wage for each hour of paid sick leave denied Plaintiff under the EPSLA, for a period of two (2) weeks of paid leave which Defendants denied the Plaintiff; an additional equal amount as liquidated damages; and an amount for costs and reasonable attorney's fees; together with back pay and benefits from the time period of his discharge to the present; front pay; back and front seniority, benefits, bonuses, commissions, overtime, shift differentials, and raises Doe would have received; any and all amounts of back and front benefits in the form of health insurance, 401K, paid time-off, and life insurance; attorneys' fees, expert witness fees, and costs of suit.

**COUNT XVI:**
**RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF THE FAMILIES**
**FIRST CORONAVIRUS RESPONSE ACT / EMERGENCY PAID SICK LEAVE ACT**
**(Plaintiff, John Doe v. Defendants, Thermo Electric Company, Inc.; Thermo Electric PA,**
**Inc.; Pierre Emmanuel-Lucq; and Brandon Conlin)**

259.    All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

260.    At all times relevant hereto, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., each was engaged in commerce, each was in an industry or activity affecting commerce, and each employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

261.    At all times relevant hereto, Plaintiff was employed at a worksite where 50 or more employees were employed by the employer within 75 miles of that worksite.

262.    Plaintiff had, at all times relevant hereto, been employed by the Defendants, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., for at least thirty (30) days making him eligible for leave under the EPSLA.

263.    Doe is HIV-positive.  HIV substantially limits the major life function of the immune system.

264.    Plaintiff identifies the following evidence – which Plaintiff contends also amounts to direct evidence – of HIV discrimination at Thermo Electric.  An individual who is the former Manufacturing Supervisor in the Engineering Department for Thermo Electric, who left employment in July 2019, and who was a co-employee of Plaintiff's during the time period in question, overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  The Witness Statement attached hereto as Exhibit "B" establishes that a conversation occurred, which was subsequently communicated to Plaintiff, which is discriminatory toward

Plaintiff based on Plaintiff's HIV-positive status, from Mr. Emmanuel-Lucq, the President and

Chief Executive Officer of Thermo Electric Company, to former employee, Manufacturing

Supervisor, Mr. De Los Santos, to wit:

> *While working for Thermo Electric as an engineer I over heard Pierre discussing [Plaintiff]'s HIV condition with someone in his office.  This happened while looking for someone in the office next to Pierre's.  I over heard Pierre discussing [Plaintiff]'s condition and medical insurance rate changes due to this.  When I heard that I didn't know what to do.  Because [Plaintiff] is a long time friend and I didn't want him to get blindsided.  I decided to tell him what I've just heard.  His condition is not something he can control.  No one should be discriminated for something like this, nor should his HIV condition be discussed as carelessly as it was discussed that day specially without his consent.*

See Witness Statement from Former Employee, Thermo Electric Manufacturing

Supervisor, Mr. Jose de los Santos, attached hereto as Exhibit "B".

265.     In or around January 2020, Plaintiff overheard Mr. Pierre Emmanuel-Lucq,

President and Chief Executive Officer, who is also in a managerial or supervisory capacity at the

company, speaking to Mr. Brandon Conlin, Operations Manager, about Plaintiff's HIV-positive

status and the company medical insurance, or words to that effect.  Mr. Conlin is also the

Plaintiff's direct supervisor/manager.  When both men saw Plaintiff, they immediately stopped

speaking at that point in time.

266.     Plaintiff recollects a conversation where the medical insurance benefits at the

company were being discussed, by a representative on behalf of Thermo Electric PA, Inc.'s

insurance carrier, believed to be Greystone Benefits.  The representative commented during the

meeting that there were "high dollar prescriptions" and "high dollar people" on the plan, or

words to that effect.

267.     Plaintiff recollects that he called off from work to his direct supervisor/manager,

Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the

timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.

268.    Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

269.    On or about June 9, 2020, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.  Mr. Emmanuel-Lucq, upon information and belief, was believed to be involved in the decision to terminate Plaintiff's employment, and/or the person with whom Mr. Emmanuel Lucq was speaking in the conversation overheard by Mr. De Los Santos, and/or Mr. Conlin who was speaking to Mr. Lucq about Plaintiff's HIV-positive status, were involved in the decision to terminate Plaintiff's employment.  Mr. Conlin also signed the termination letter to Plaintiff along with Kriss Cramer, Human Resources Manager.

270.    According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric on the timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Thermo Electric did not permit Plaintiff to take.  Instead, Plaintiff's accrued unused PTO was paid out to Plaintiff upon discharge.

271.    Upon information and belief, other similarly-situated individuals were believed to have been afforded time-off during the relevant timeframe, including but not limited to, for example, time-off which was related to the COVID-19 pandemic.  However, Plaintiff was not treated the same on account of his HIV-positive status and sexual orientation.

272.    Ms. Tanya Feconda, Shipping and Receiving, is believed to have been approved to take time off, to get tested for COVID-19, for feeling sick, and is believed to have received extra time off from the company because the company thought she had COVID-19.  Ms. Feconda is believed to be heterosexual and is not believed to be HIV-positive.

273.    Mr. Rick Hoover, head of Shipping and Receiving at the relevant time, and believed to be Receiving Manager at the relevant time, is believed to have requested days, possibly a week or a week-and-a-half off, in or around the timeframe of May and/or June 2020. Mr. Hoover is believed to be heterosexual and is not believed to be HIV-positive.

274.    In documentation supplied to the EEOC, Ms. Kriss Cramer, Human Resources Manager, sent an e-mail to Mr. Brandon Conlin, and Mr. Pierre-Emmanuel Lucq, on January 14, 2020, concerning Plaintiff, "He has a habit of taking PTO for personal reasons or emergencies," but it was known Plaintiff was HIV-positive, as above, by Mr. Pierre-Emmanuel Lucq and Mr. Conlin.

275.    Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., did not permit Plaintiff to take time off under the FFCRA and/or EPSLA.

276.    Plaintiff requested assistance in the form of requests for time-off related to his health condition in or around April 2020, May 2020, and/or possibly June 1, 2020.

277.    Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during the timeframe of April 2020, May 2020, and/or possibly June 1, 2020.  Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

**WHEREFORE,** Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount that will fully and fairly compensate him for an amount equal to the federal minimum wage for each hour of paid sick leave denied Plaintiff under the EPSLA, for a

period of two (2) weeks of paid leave which Defendants denied the Plaintiff; an additional equal amount as liquidated damages; and an amount for costs and reasonable attorney's fees; together with back pay and benefits from the time period of his discharge to the present; front pay; back and front seniority, benefits, bonuses, commissions, overtime, shift differentials, and raises Doe would have received; any and all amounts of back and front benefits in the form of health insurance, 401K, paid time-off, and life insurance; attorneys' fees, expert witness fees, and costs of suit.

### JURY DEMAND

Doe hereby requests a trial by jury of eight (8) members on all counts so triable.

Respectfully submitted,

**THE LAW OFFICES OF ERIC A. SHORE, P.C.**

DATED:  04/07/2021                    BY: _____

**JUSTIN F. ROBINETTE, ESQUIRE**
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Tel:  (215) 944-6121
Fax: (215) 944-6124
E-mail: JustinR@ericshore.com

*Attorney for Plaintiff, John Doe*

## VERIFICATION

I, ██████████████ hereby verify that I am the Plaintiff in the within action, and I hereby verify that I have reviewed the facts set forth in the Complaint, and the facts set forth in the Complaint are true and correct to the best of my knowledge, information, and belief.  This statement is made subject to the penalties of Section 4904 of the Crimes Code (18 PA. C.S. § 4904) related to unsworn falsification to authorities.  I verify that I am submitting the Complaint under penalty of perjury.


DATED:  04/07/2021  _____

Mr. ████████████

# EXHIBIT "A"



Click using this portal to upload documents.

**Upload**

| Name | Type | Added On | Added By |
|------|------|----------|----------|
| 2021-01-08 ██████ ███████ 161.pdf | Closure Notice/NRTS | 01/08/2021 | George Collins |
| Thermo Position Statement - Attachments | Position Statement Attachments - Non-Confidential | 12/11/2020 | Respondent Respondent |
| Thermo Position Statement | Position Statement | 12/11/2020 | Respondent Respondent |
| 2020-11-30 email CP atty re status.pdf | Correspondence To/From Charging Party's Attorney | 12/02/2020 | Phillip Hoefs |
| 2020-11-27 email CP atty re status.pdf | Correspondence To/From Charging Party's Attorney | 12/01/2020 | Phillip Hoefs |
| 2020-11-04 email CP atty re status.pdf | Correspondence To/From Charging Party's Attorney | 11/05/2020 | Phillip Hoefs |
| Mr. ████████ v. Thermo Electric Co., Inc., et al..pdf | Correspondence To/From Charging Party's Attorney | 09/08/2020 | Rebecca Woodward |
| ████████ - Attorney-Referred | EOA/Letter of Representation From Charging Party's | 09/08/2020 | Rebecca Woodward |

EEOC Form 161 (11/16)

**U.S. Equal Employment Opportunity Commission**

## Dismissal and Notice of Rights

| To: | From: |
|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮ <br> **Coatesville, PA 19320** | **Baltimore Field Office** <br> **G.H. Fallon Federal Building** <br> **31 Hopkins Plaza, Suite 1432** <br> **Baltimore, MD 21201** |

| | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2020-05597 | **George Collins,** <br> **Investigator** | **(410) 801-6697** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

**Rosemarie Rhodes,** <br> **Director**

01-08-2020

*(Date Mailed)*

Enclosures(s)

cc:
| | |
|---|---|
| **Patrick Heffron** <br> **The Chartwell Law Offices, LLP** <br> **125 N. Washington Avenue** <br> **The Connell Building, Suite 240** <br> **Scranton, PA 18503** | **Justin F. Robinette, Esq.** <br> **LAW OFFICES OF ERIC A. SHORE** <br> **1500 JFK Boulevard, Suite 1240** <br> **Philadelphia, PA 19102** |

Enclosure wi h EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability.  *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),   **"major life activities"  now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT "B"

To whom it may Concern,

While working For Thermo Electric as an engineer,
I over heard pierre discussing ███ 's HIV condition with
some one in his office. This happened while looking
For some one in the office next to Pierre's.

I over heard pierre discussing ███ 's condition and
medical insurance rate changes due to this . When I heard
that, I didn't know what to do. Because ███ is
a long time Friend and I didn't want him to get
blindsided. I decided to tell him what I've just
heard. His condition is not something he can control.
No one should be discriminated For something like
this, nor should his HIV condition be disussed as carelesly
as it was discussed that day specially with out his
consent.

Jose De los santos
1/ 17 /2021