## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN DOE,                                              :
                                                       :
      Plaintiff                               :
                                                       :        2:21-CV-01648
    v.                                         :
                                                       :
THERMO ELECTRIC COMPANY, INC.;                         :
THERMO ELECTRIC PA, INC.; PIERRE                       :
EMMANUEL-LUCQ; BRANDON CONLIN,                         :
                                                       :
      Defendants

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT, IN PART

Defendants, Thermo Electric Company, Inc. ("Thermo Electric"), Thermo

Electric PA, Inc., Pierre Emmanuel-Lucq ("Emmanuel-Lucq"), and Brandon

Conlin ("Conlin"), by and through their undersigned counsel, Chartwell Law,

respectfully submit this Memorandum of Law in Support of its Motion to Dismiss

Plaintiff's Complain, In Part.

## I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a Complaint (Doc. 1) on April 7, 2021.

On that same date, Plaintiff filed a Motion of Plaintiff to Proceed Anonymously,

together with a supporting brief (Doc. 2), requesting leave to file the Complaint so

that the caption reflects the pseudonym "John Doe" and further requesting that the

parties shall file any and all pleadings and other documents with the Court

using the pseudonym "John Doe," and/or shall redact any pleadings and other documents filed of Plaintiff's name as well as permission to redact Plaintiff's address from the Complaint and any amendment thereto.  On May 26, 2021, Defendants filed a Memorandum of Law in Opposition to Plaintiff's motion.   On or about May 5, 2021, Defendants executed Waivers of Service, which were filed on May 10, 2021.

The Complaint alleges that Plaintiff was hired in or around 2011 by Defendants, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc. (Doc. 1 at ¶ 9).  According to the Complaint, Plaintiff is bisexual and HIV positive. Id. at ¶¶ 10, 11).  Plaintiff alleges that, at the time of his hire, "it was not believed to be known by management, including President and Chief Executive Officer ("CEO"), Pierre Emmanuel-Lucq, and/or Plaintiff's co-employees, that Plaintiff is HIV-positive."  Id. at ¶ 12.  The Complaint, despite being 78 pages in length, makes no mention of whether Plaintiff's sexual orientation was known to Defendants.  Plaintiff alleges that Conlin made some disparaging comments "in a manner intended to be offensive to the LGBT community, openly and casually in the workplace;" however, he admits that the comments were not directed at him specifically.  (See Doc. 2, Exhibit A at p. 3).

According to the Complaint, "Plaintiff was wrongfully demoted … in or around February 2020 on account of sexual orientation … and his pay was cut.

(Doc. 1 at ¶ 40).  The Complaint then concludes "Plaintiff was subsequently wrongfully discharged on or about June 9, 2020, on account of Plaintiff being bisexual."  Id. at ¶ 41.  As "direct evidence of discrimination," the Complaint relies on a witness statement from a former Manufacturing Supervisor who left employment with Thermo Electric in July 2019.  Id. at ¶ 43.  The Complaint alleges that, on some unnamed date prior to July 2019, the former employee overheard Mr. Emmanuel-Lucq speaking openly about Plaintiff's HIV-positive status at work.  Id. See also the Witness Statement attached to the Complaint as Exhibit "B."

The Complaint alleges that in or around January 2020, Plaintiff overheard Mr. Emmanuel-Lucq speaking to Mr. Conlin about Plaintiff's HIV-positive status and the company medical insurance, or words to that effect, and they immediately stopped speaking when they saw Plaintiff.  Id. at ¶ 19.  With regard to Plaintiff's termination, he alleges the following:

> Plaintiff recollects that he called off from work to his direct supervisor/manager, Operations Manager, Mr. Brandon Conlin, which Plaintiff recollects was in or around the timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 – Plaintiff recollects, prior to his wrongful and retaliatory discharge.
>
> …
>
> Plaintiff has a recollection of one (1) day he took off for symptoms of severe diarrhea during this timeframe. Plaintiff recalls taking multiple days off during the subject timeframe to his recollection.

3

…

On or about June 9, 2020, Defendant, Thermo Electric Company, Inc., and/or Thermo Electric PA, Inc., wrongfully terminated/discharged Plaintiff.

…

According to Plaintiff's timesheet provided by Thermo Electric to the EEOC in this matter, paid-time off ("PTO") is listed for June 13, 2020, by Thermo Electric on the timesheet, in the amount of 20.27 hours, which Plaintiff had available to take, but which Defendants did not permit Plaintiff to take. Instead, Plaintiff's accrued unused PTO was paid out to Plaintiff upon discharge.

…

Upon information and belief, other similarly-situated individuals were believed to have been afforded time-off during the relevant timeframe, including but not limited to, for example, time-off which was related to the COVID-19 pandemic. However, Plaintiff was not treated the same on account of his HIV-positive status and/or sexual orientation.

Id. at ¶¶ 22 - 26.

Plaintiff's Complaint contains sixteen (16) Counts for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), The Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-963, the Family and Medical Leave Act ("FMLA"), and the Families First Coronavirus Response Act ("FFCRA") / Emergency Paid Sick Leave Act ("EPSLA"). Defendants seek to dismiss all Counts other than Counts IV and IX of Plaintiff's Complaint.

Plaintiff agreed to dismiss Counts XV and XVI of the Complaint (See ECF No. 16 at 3) and, by Order dated July 23, 2021, Counts XV and XVI have been dismissed (See ECF No. 19).

## II.    ISSUE

WHETHER COUNTS I-III and VII-XIV OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED?

Suggested Answer:        Yes.

## III.    ARGUMENT

### A.    Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  However, "the tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  At the motion to dismiss stage, the court considers whether the plaintiff is entitled to offer evidence to support its allegations.  Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the complaint, the plaintiff has not pled enough facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561 (2007).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 663-64.

Rule 8 of the Federal Rules of Civil Procedure "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests[.]'"  Twombly, 550 U.S. at 554 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, even under this lower notice pleading standard, a plaintiff must make a factual showing of entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory.  See Twombly, 550 U.S. at 561. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "shown" – "that the pleader is entitled to relief."  Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)).  A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law."  Neitzke v. Williams, 490 U.S. 319, 326 (1989).

**B.**     **Plaintiff Has Not Pled Facts To State A Claim For Relief That Is Plausible On Its Face Pursuant to Title VII**

Counts I through III of Plaintiff's Complaint allege violations of Title VII, including wrongful discharge/termination (Count I), harassment, supervisory harassment, and hostile work environment (Count II), and wrongful demotion (Count III).  For the reasons set forth herein, these Counts should be dismissed.

Title VII expressly prohibits employment discrimination based on race, color, religion, sex and national origin.  In 2020, the United States Supreme Court decided the landmark case of Bostock v. Clayton Cnty. and held that Title VII prohibits employment discrimination on the basis of sexual orientation, through its prohibition of discrimination on the basis of "sex." *See, generally*, Bostock, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020) (interpreting the scope of Title VII's discrimination ban that uses identical language to Title IX's discrimination ban).

Title VII discrimination claims are governed by a burden-shifting framework.  See Jones v. Southeastern Pa. Transp. Auth., 796 F.3d 323, 325-26 (3d Cir. 2015).  In brief, that framework requires that the plaintiff demonstrate that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) under circumstances that give rise to an inference of unlawful sex-based discrimination.  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). The last element also requires that the plaintiff demonstrate a causal connection between his protected status and the allegedly adverse action.  Id. at 798.  The key

7

focus of the *prima facie* test is "always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" Id. (citation omitted). The elements of the *prima facie* case "must not be applied woodenly but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination." Geraci v. Moody-Tottrup Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996).

The Court of Appeals for the Third Circuit has held that discrimination "because of sex" includes a claim that an employee was discriminated against because of his failure to adhere to or comply with gender stereotypes. Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257 (3d Cir. 2001). In Bibby, the Court relied on Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989), to hold that "a plaintiff may be able to prove that same-sex harassment was discrimination because of sex by presenting evidence that the harasser's conduct was motivated by a belief that the victim did not conform to the stereotypes of his or her gender." Bibby, 260 F.3d at 262-63. However, a plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] ... because of ... sex.'" Id. at 264 (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)).

Moreover, "'a plaintiff may establish that an employer has violated Title VII by proving that discrimination based on sex created a hostile or abusive work environment.'" Jones, 796 F.3d at 328 (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).  In order to do so, a plaintiff must make a *prima facie* showing that: "(1) []he suffered intentional discrimination because of h[is] sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected h[im], (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of *respondeat superior* liability." Bumbarger v. New Enterprise Stone and Lime Co., Inc., 170 F.Supp.3d 801, 826 (E.D. Pa. 2016) (quoting Martinez v. Rapidigm, Inc., 290 F. App'x 521, 524 (3d Cir. 2008) (internal quotation marks omitted)).

"Many may suffer ... harassment at work, but if the reason for that harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief." Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006).  This third element "identif[ies] what harassment, if any, a reasonable jury could link to retaliatory animus." Id. at 449-50.

To succeed under a hostile work environment claim, a plaintiff must establish: (1) she suffered intentional discrimination because of a protected status (2) the discrimination was severe or pervasive (3) the discrimination detrimentally

affected the plaintiff (4) the discrimination would detrimentally affect a reasonable person in like circumstances (5) AND the existence of respondeat superior liability.  Hunter v. Trs. Of the Univ. of Pa., 2021 U.S. Dist. Lexis 72706 (E.D.Pa. 2021).  Simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory change in the terms and conditions of employment.  Id.  Thus, "mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII."  Harris v. Forklift Sys., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).

A review of the facts alleged in Plaintiff's Complaint reveals nothing but conclusory statements that Plaintiff was discriminated against due to his sexual orientation.  First, the Complaint is completely silent as to whether any of the defendants ever had any knowledge of Plaintiff's sexual orientation.  The Complaint specifies that Plaintiff's HIV status was unknown at the time of his hire and became known at a later date; however, there are no such allegations regarding Plaintiff's sexual orientation.  Similarly, the Complaint alleges that Emmanuel-Lucq and Conlin were overheard discussing Plaintiff's HIV status, not his sexual orientation.  Likewise, Plaintiff's demotion / termination / discharge claims allege that they occurred after his HIV status became known and discussed in relation to employer-sponsored healthcare costs.  At most, the allegations involve

discrimination due to Plaintiff's HIV status.  However, there are simply no facts to

support a claim for wrongful demotion or termination based on Plaintiff's sexual

orientation.

The Complaint alleges that certain offensive words and phrases were used in

the workplace but Plaintiff admitted in his Declaration attached to his motion to

proceed anonymously that the language was not directed at him.  Further, there are

no facts alleged to support a claim that the alleged conduct was severe and

pervasive.  As indicated above, epithets / offhand comments such as those alleged

in the Complaint do not sufficiently affect the conditions of employment to

implicate Title VII.  not sufficiently affect the conditions of employment to

implicate Title VII.  Accordingly, Counts I through III of Plaintiff's Complaint

should be dismissed.

**C.** **Plaintiff Has Not Pled Facts To State A Claim For Relief That Is Plausible On Its Face Pursuant to The ADA For Failure-To-Accommodate Disability And Retaliatory Discharge / Termination In Retaliation For Requests For Reasonable Accommodation**

Counts VII and VIII of Plaintiff's Complaint allege violations of the ADA,

including failure-to-accommodate disability (Count VII), and retaliatory

discharge/termination in retaliation for requests for reasonable accommodation

(Count VIII).  For the reasons set forth herein, these Counts should be dismissed.

Pursuant to the ADA, an employer must reasonably accommodate an employee's disability.  Williams v. Philadelphia Housing Authority Police Department, 380 F.3d 751, 761 (3d Cir. 2004).  Moreover, an employer's failure to engage, in good faith, in an interactive process to determine whether an accommodation can reasonably be made for a disabled employee constitutes prohibited discrimination.  Taylor v. Phoenixville School District, 184 F.3d 296, 311-312 (3d Cir. 1999).

The United States Court of Appeals for the Third Circuit has stated that

> [a]n employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

Colwell v. Rite Aid Corporation, 602 F.3d 495, 504 (3d Cir. 2010) (internal quotation marks omitted).

Here, the Complaint is devoid of any allegations that Plaintiff requested accommodations or assistance for his disability.  In the months leading up to his termination, Plaintiff alleges that he called off from work in or around the timeframe of April 2020 and/or May 2020 – and/or, possibly June 1, 2020 one (1) day for symptoms of severe diarrhea during this timeframe.  Plaintiff recalls taking

multiple days off during the subject timeframe to his recollection but does not provide any details regarding symptoms.  He does not indicate what, if any, reason he provided for taking multiple days off.  Certainly, there is no indication in the Complaint that Plaintiff advised any of the Defendants that he needed any sort of accommodations or assistance with his disability at any time prior to his termination.  In the absence of a request for such accommodations or assistance there can be no retaliation.  Accordingly, Counts VII and VIII of Plaintiff's Complaint should be dismissed.

> **D.** **Plaintiff Has Not Pled Facts To State A Claim For Relief That Is Plausible On Its Face Pursuant to The PHRA For Wrongful Discharge/Termination, Harassment, Supervisory Harassment, And Hostile Work Environment Failure-To-Accommodate Disability And Retaliatory Discharge / Termination In Retaliation For Requests For Reasonable Accommodation**

Counts IX through XII of Plaintiff's Complaint allege violations of the PHRA, including wrongful discharge/termination (Count IX), harassment, supervisory harassment, and hostile work environment (Count X), failure-to-accommodate disability (Count XI), and retaliatory discharge/termination in retaliation for requests for reasonable accommodation and retaliatory discharge/termination in retaliation for requests for reasonable accommodation (Count XII).  For the reasons set forth herein, these Counts should be dismissed.

It is widely accepted that "Title VII standards generally apply in PHRA cases." Woodson v. Scott Paper Co., 109 F.3d 913, 932 (3d Cir. 1997).  Thus, for

the reasons set forth in the sections above, Plaintiff's PHRA claims should be dismissed to the extent they are based on Plaintiff's sex and / or sexual orientation. In addition, the failure to accommodate and retaliation claims likewise fail based on the lack of factual averments in the Complaint regarding requests for accommodations or assistance.  Accordingly, Counts IX through XII of Plaintiff's Complaint should be dismissed.

### E.   Plaintiff Has Not Pled Facts To State A Claim For Relief That Is Plausible On Its Face Pursuant to The FMLA For Interference, Discrimination, and/or Retaliation and Retaliatory Discharge / Termination

Counts XIII and XIV of Plaintiff's Complaint allege violations of the FMLA, including Interference, Discrimination, and/or Retaliation (Count XIII) and Retaliatory Discharge / Termination (Count XIV).  For the reasons set forth herein, these Counts should be dismissed.

The Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et. seq., was enacted "to provide leave for workers whose personal or medical circumstances necessitate leave in excess of what their employers are willing or able to provide."  Victorelli v. Shadyside Hospital, 128 F.3d 184, 186 (3d Cir. 1997).  Pursuant to section 2612 of the FMLA,

> . . . an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1).

To succeed on an FMLA interference claim, a plaintiff must establish that:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

Capps v. Mondelez Global, LLC, 847 F.3d 144, 155 (3d Cir. 2017) (quotation omitted).

Under the first prong of this test, to demonstrate that one is an eligible employee, a plaintiff must show that he was entitled to leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of [his] position."  29 U.S.C. § 2612(a)(1)(D).  In this context, a "serious health condition" is defined as "an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115."  29 C.F.R. § 825.113(a).  "A regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave." 29 C.F.R. § 825.113(c).

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that:

> (1) [he] invoked [his] right to FMLA-qualifying leave, (2) [he] suffered an adverse employment decision, and (3) the adverse action was causally related to [his] invocation of rights."

Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-302 (3d Cir. 2012).

The elements of an FMLA discrimination case are the same.  See Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1016 (8th Cir. 2013).  Furthermore, requesting FMLA leave "does not provide employees with a right against termination for a reason other than *interference* with rights under the FMLA."  See Lichtenstein, 691 F.3d at 312 (emphasis added).  Gunter v. Cambridge-Lee Indus., LLC, 186 F. Supp. 3d 440, 453, 2016 U.S. Dist. LEXIS 62114, *32.

Not unlike the ADA, the regulations promulgated by the U.S. Department of Labor under the FMLA require the employee to give his employer notice that he needs FMLA leave.  As set forth in 29 C.F.R. § 825.302(a) (2001), the employee must provide at least 30 days notice, if the leave is foreseeable, or notice "as soon as practicable," if 30 days notice is not practicable.

While the employee may provide verbal notice to the employer, 29 C.F.R. § 825.302(c) (2001) requires the notice to be sufficient to make the employer aware that the employee is seeking qualified leave under the FMLA.  Significantly, as set forth in 29 C.F.R. § 825.208(a) (2001), an employee must explain the reasons for

the leave so the employer may determine whether the leave should be paid or

unpaid.

Additionally, pursuant to the regulations, in order to prove a claim under

the FMLA, the employee must provide the employer with notice sufficient to show

that the reason for the leave is qualified under the FMLA.  Id. at 313. *See*

*also* Wilson v. Lemington Home for the Aged, 159 F. Supp. 2d 186, 192 (W.D. Pa.

2001); Viereck v. City of Gloucester City, 961 F. Supp. 703, 707-08 (D.N.J. 1997).

"Nothing in the [FMLA] . . . places a duty on an employer to affirmatively

grant leave without such a request or notice by the employee.  Slaughter v.

American Building Maintenance Co., 64 F. Supp. 2d 319, 326 (S.D.N.Y. 1999).

"While an employee's statements may give rise to a duty on the part of the

employer to inquire into the nature of the employee's need for leave, 'the employer

is not required to be clairvoyant.'" Id. at 326, *quoting* Johnson v. Primerica, 1996

WL 34148 *5 (S.D.N.Y. Jan. 30, 1996) (emphasis added).  Courts have dismissed

an FMLA claim "where the notice supplied to the employer was patently

insufficient to inform the employer of the employee's qualified reason for taking

leave." Id., citing Seaman v. CSPH, Inc., 179 F.3d 297, 302 (5th Cir. 1999); Bailey

v. Amsted Indus., Inc., 172 F.3d 1041, 1046 (8th Cir. 1999); Satterfield v. Wal-

Mart Stores, Inc., 135 F.3d 973, 980-81 (5th Cir.), *cert denied*, 525 U.S. 826

(1998); <u>Carter v. Ford Motor Co.</u>, 121 F.3d 1146, 1148-49 (8th Cir. 1997); <u>Gay v.</u>

<u>Gilman Paper Co.</u>, 125 F.3d 1432, 1436 (11th Cir. 1997).

Here, Plaintiff's Complaint is devoid of any facts to show that he provided

Defendants with notice of his need or desire to take a leave of absence as provided

for under the FMLA.  The Complaint indicates, at best, a few isolated incidents

over the course of several months during the early portion of a global pandemic

where Plaintiff called out, including one incident for severe diarrhea.  There is no

indication if any of the time missed from work was due to Plaintiff's HIV

condition / side effects from necessary medication or something else unrelated (i.e.

food-related, stomach bug, etc.) or whether Plaintiff even sought medical treatment

to determine the cause.  Defendants cannot be charged with being "clairvoyant" or,

for that matter, having the expertise to interpret what could only be described, even

in a light most favorable to Plaintiff, as the most ambiguous of alleged

"symptoms," especially at such an unprecedented time when employers were

navigating the early COVID-19 landscape.

Having failed to give notice to Defendants of any disability, failed to request

an accommodation of any kind, and failed to request a leave of absence under

the FMLA or otherwise, Plaintiff's claims under the FMLA should, therefore, be

dismissed.

IV.   **<u>CONCLUSION</u>**

For the reasons set forth above, Defendants respectfully request that their

Motion to Dismiss Plaintiff's Complaint, In Part should be granted.

Respectfully Submitted,

**CHARTWELL LAW**

<u>s/ Patrick Heffron</u>
E. Patrick Heffron, Esquire
Jerome A. Flanagan, Esquire
125 N. Washington Avenue, Suite 240
Scranton, PA  18503
(570) 558-4820

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provision of the Public Access Policy of the Unified Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts that require the filing of confidential information and documents differently than non-confidential information and documents.

**CHARTWELL LAW**

By: /s/ E. Patrick Heffron, Esquire
  E. Patrick Heffron, Esquire
  Atty I.D. No.:  93126
  125 North Washington Avenue
  The Connell Building, Suite 240
  Scranton, PA 18503
  Telephone: (570) 558-4820

## **CERTIFICATE OF SERVICE**

I, E. Patrick Heffron, Esquire hereby certify that I have this 9th day of August, 2021 served a true and correct copy of the foreging Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint, In Part via ECF filing upon the following individuals:

Brian Doyle, Esquire
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Tel: (215) 944-6121
Fax: (215) 944-6124
E-mail: BrianD@ericshore.com

Attorney for Plaintiff, John Doe

**CHARTWELL LAW**

s/ Patrick Heffron
E. Patrick Heffron, Esquire
Jerome A. Flanagan, Esquire
125 N. Washington Avenue, Suite 240
Scranton, PA  18503
(570) 558-4820